PD-0289-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/15/2015 4:49:14 PM
Accepted 4/16/2015 12:16:35 PM
ABEL ACOSTA
CLERK

No. PD-0289-15

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AT AUSTIN, TEXAS

**JESSE LOPEZ, Appellant**

*v.*

**THE STATE OF TEXAS**

## ON PETITION FOR DISCRETIONARY REVIEW
## FROM THE DECISION BY THE THIRTEENTH COURT OF APPEALS
## IN CAUSE NUMBER 13-13-00080-CR

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

April 16, 2015

ABEL ACOSTA, CLERK

**Richard W.B. "Rick" Davis**
**State Bar No. 05539100**

**504 E. 27ʰ St.**
**Bryan, Texas 77803**

**(979) 779-4357 - telephone**
**(888) 435-4080 - facsimile**
**rdavis@attorneyrickdavis.com**

**Attorney for Appellant**
**Jesse Lopez**

## Identity of Parties and Counsel

APPELLANT:                          Jesse Tirado Lopez

Appellate Counsel:                  Richard W.B. "Rick" Davis, P.C.
                                    By: Rick Davis
                                    504 E. 27th Street Ave
                                    Bryan, Texas 77803

Trial Counsel:                      Thomas B. Reed
                                    P.O. Box 9347
                                    College Station, TX 77842-9347

APPELLEE:                           The State of Texas

Appellate Counsel                   Jessica Escue
                                    Assistant District Attorney
                                    300 E. 26th Street, Suite 310
                                    Bryan, Texas 77803

Trial Counsel:                      John Brick
                                    Assistant District Attorney
                                    300 E. 26th Street, Suite 310
                                    Bryan, Texas 77803

TRIAL JUDGE:                        Hon. Dan Beck
                                    (sitting by assignment)

ii

# Table of Contents

Identity of Parties and Counsel ......................................................................... ii

Index of Authorities ........................................................................................ iv

Statement Regarding Oral Argument ................................................................. 5

Statement of the Case ...................................................................................... 5

Questions for Review ....................................................................................... 7

A.      Did the Court of Appeals err in holding that representation of a Defendant by a court appointed attorney clearly unqualified under the Texas Fair Defense Act was not a *per se* violation of the Act? ........................................................................ 7

B.   Did the Court of Appeals err in holding that representation of a Defendant by a court appointed attorney clearly unqualified under the Texas Fair Defense Act was not a *structural error* that is immune from a harm analysis? ........................................ 7

Argument in Support of Questions for Review ..................................................... 7

Prayer .......................................................................................................... 16

Certificate of Service ....................................................................................... 17

Certificate of Compliance Per T.R.A.P. 9.4(i)(3) .............................................. 18

Appendices .................................................................................................... 19

# Index of Authorities

## Cases

*Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. – 1997) ................................- 9 -

*Cantu v. State*, 930 S.W.2d 594 (Tex.Cr.App.1996)........................................- 10 -

*Cantu v. State*, 930 S.W.2d 594, 600-601 (Tex. Crim. App. -- 1996) ..................- 13 -

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986) ................................- 9 -

*Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex.1998)........- 14 -

*Lopez v. State*, 2015 WL 602007, No. 13-13-00080-CR (Tex. App. – Corpus Christi 2015,

    pet. pending). ...................................................................................- 7 -

*Strickland v. Washington*, 466 U.S. 668 (1984)...............................................- 8 -

## Statutes

Texas Penal Code §12.42(d) ...........................................................................- 6 -

Texas Penal Code §22.01(b)(2)(A). ..................................................................- 6 -

## Statement Regarding Oral Argument

Due to the nature of the case and the fact that this is apparently the first time that the Texas Fair Defense Act has been construed, an oral argument would likely benefit the Court. Oral argument would emphasize and clarify the written arguments in the brief and aid the Court in analyzing and understanding the facts.

## Statement of the Case

The State of Texas brought this criminal case against Jesse Tirado Lopez in the 85th District Court of Brazos County, Texas.

Jesse Lopez was originally charged with *Assault Family/Household Member*, a Class A misdemeanor. Appellant was indigent and a lawyer named Thomas Reed was appointed to represent him. Mr. Reed is on the Brazos County Court Appointed Attorney list and is qualified to accept appointments *only in misdemeanor cases*.

He was twice rejected by the Brazos County District Judges on his application to be eligible to accept appointments in felony cases. He is not even eligible to accept appointments in State Jail Felony cases.

Because the Appellant had been previously convicted of *Assault – Family Violence*, his Class A misdemeanor charge was enhanced to a 3rd degree felony pursuant to Texas Penal Code §22.01(b)(2)(A).

On December 4, 2012, the jury found him guilty of the charge. The 3rd degree felony was enhanced to Habitual Offender status pursuant to Texas Penal Code §12.42(d) since the Appellant had twice before been convicted of Felony *Driving While Intoxicated.*

The punishment phase was tried to the Bench. The Honorable Dan Beck, Visiting Judge Presiding, found the two enhancement paragraphs to be true and sentenced the Appellant to serve 32 years confinement in the Institutional Division of the Texas Department of Criminal Justice on the December 5, 2012. (R.R. Vol. 5, P. 29).

Appellant, through counsel retained by his family, timely filed a *Notice of Appeal* and a *Motion for New Trial.* A lengthy hearing on the Motion was conducted on February 1, 2013. The Motion was overruled by operation of law. This appeal ensued.

**Statement of Procedural History**

Pursuant to an order of the Supreme Court of Texas, the appeal was transferred on docket equalization from the Tenth Court of Appeals to the Thirteenth Court of Appeals. Two points of error were presented on direct appeal. The Court of Appeals affirmed Lopez's conviction and sentence in an unpublished opinion. *Lopez v. State,* 2015 WL 602007, No. 13-13-00080-CR (Tex. App. –

6

Corpus Christi 2015, pet. pending). No motion for rehearing was filed. Lopez's

petition is due in this Court on or before April 15, 2015.

**Questions for Review**

A. **Did the Court of Appeals err in holding that representation of a Defendant by a court appointed attorney clearly unqualified under the Texas Fair Defense Act was not a *per se* violation of the Act?**

B. **Did the Court of Appeals err in holding that representation of a Defendant by a court appointed attorney clearly unqualified under the Texas Fair Defense Act was not a *structural error* that is immune from a harm analysis?**

**Argument in Support of Questions for Review**

Lopez maintains that the Court of Appeals erred when it effectively held:

…we are not prepared to hold that representation by a person whose name does not appear on the list, for whatever reason, would be a *per se* violation of the TFDA or the right to counsel under the 6th Amendment.[1]

Thomas Reed was not qualified to represent Mr. Lopez in the trial of his

habitual felony case. He was twice found unfit for appointments for any felony

grade offense by the District Judges of Brazos County.[2]

---

[1] *Lopez v. State*, No. 13-13-00080-CR, 2015 WL 602007, at *5 (Tex. App. Feb. 12, 2015)

[2] The trial record does show that Reed had some previous trial experience in felony cases. However this does not excuse the fact that Mr. Reed was not qualified to represent Mr. Lopez under the TFDA. Trying previous felony cases does not translate to an ability to provide a competent defense in a habitual felon case. In fact, it can be inferred that the District Judges of Brazos County knew that Reed had tried a few felonies when they twice rejected his application to be eligible to accept felony appointments in Brazos County.

7

Until now, there were a few reported cases that cite the Texas Fair Defense Act (TFDA) tangentially, but none where a complaint was based on a pellucidly clear, incontrovertible, flagrant violation of the TFDA as this case presents.

The Court of Appeals observed of the TFDA:

> The statute does not address what happens in the event a lawyer is appointed to represent a defendant in a misdemeanor or felony case when the lawyer's name is not included on the public appointment list. Appellant has not cited any TFDA case authority to support any of his propositions.[34]

Appellant urges this Court to hold that, in enacting the TFDA, the Texas legislature created an ***objective standard*** for qualification of and appointment of counsel for indigent defendants, and that a violation of the Act is *per se* reversible error.

Historically, cases analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984) (adopted by the Texas Court of Criminal Appeals of Texas in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986)) have been done on a case by case basis.

This Court should hold that by enacting the Texas Fair Defense Act, the Texas Legislature obviated the need for a case by case, harmless error analysis when court appointed counsel is not qualified under the Act.

---

[3] *Lopez v. State*, No. 13-13-00080-CR, 2015 WL 602007, at *5 (Tex. App. Feb. 12, 2015)

[4] No TFDA case authority to support this proposition was cited to the Court of Appeals because none exists either pro or con.

In *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. – 1997) the Court stated, "Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis."

The result of this analytical approach has been to create an almost impossible hurdle for Appellants to overcome when complaining about grossly deficient performance by court appointed counsel unless it is what the Supreme Court labels "structural."

Moreover, many Appellants could meet *Strickland's* first prong – that is that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. But *Strickland's* second prong, that is, there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different is virtually an impossible burden to meet.

Even the qualification that "A reasonable probability is a probability sufficient to undermine confidence in the outcome" provides little help since whose confidence must be undermined is not defined and is thus also subjective. While the first prong speaks of objective standards, the second prong language is inherently subjective, ephemeral and nebulous. One can never truly know what may have been.

9

Appellant urges this Court to hold that by enacting the TFDA, the legislature has eliminated the need to meet the second prong of *Strickland* when court appointed counsel has been deemed unqualified by judicial pronouncement. Appellant urges this Court to hold that the enactment of the TFDA necessarily made appointment of an unqualified attorney to represent an indigent defendant a structural defect which eliminates the harm analysis that would otherwise be required. In other words, appointment of an unqualified attorney should be considered fundamental error under the Texas Fair Defense Act.

By analogy, in *Cantu v. State*, 930 S.W.2d 594 (Tex.Cr.App.1996), this Court of Criminal Appeals reversed the Thirteenth Court when it addressed the issue of whether a lawyer's suspension for failing to respond to demands from the State Bar Grievance Committee for information deprived the defendant of his Sixth Amendment right to effective assistance of counsel.

The Court in *Cantu* held that, as matters of first impression: (1) a never been licensed layman can never be considered "counsel" under Sixth Amendment and representation by such person will always constitute a denial of counsel; (2) a suspended or disciplined attorney is incompetent as a matter of law if reasons for the discipline imposed reflect so poorly upon attorney's competence that it may reasonably be inferred that attorney was incompetent to represent defendant; and (3) the defendant's attorney who was suspended for failing to respond to demands

10

from State Bar Grievance Committee for information was not incompetent as a matter of law and accordingly, defendant did not establish a complete denial of his right to counsel.

Appellant urges this Court that his representation by a court appointed attorney who had been deemed unqualified to accept felony appointments is virtually identical to the second of three categories defined above. Just as it may be inferred that an attorney disciplined for incompetence was incompetent to represent a particular defendant, it may and should be inferred that an attorney found to be unqualified to accept felony appointments for indigent defendants under the TFDA (not once, but twice was incompetent and unqualified to represent Jesse Lopez.

*Cantu* contains an interesting and lengthy discussion of why a *per se* rule should exist when a defendant is represented by a non-lawyer even though that was not the precise issue before the Court. The Court, in addressing judicial reticence of adoption of *per se* rules, observed:

> While the competence rationale can support a case-by-case determination of incompetence as a matter of law, we do not believe that the rationale can support a *per se* rule that suspended or disbarred counsel constitutes an automatic Sixth Amendment violation. The Supreme Court has explained that per se rules should apply only when they will usually reach the correct result as an empirical matter:
>
> > [Per se rules are] designed to avoid the costs of excessive inquiry where a per se rule will achieve the correct result in almost all cases. As we explained in a different context: "Per se rules ... require the

11

Court to make broad generalizations.... Cases that do not fit the generalization may arise, but a per se rule reflects the judgment that such cases are not sufficiently common or important to justify the time and expense necessary to identify them." [Citation omitted]. Per se rules should not be applied, however, in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption *__will not reach the correct result most of the time__*.

*Coleman v. Thompson*, 501 U.S. 722, 737, 111 S.Ct. 2546, 2558, 115 L.Ed.2d 640 (1991). *See also Bellamy*, 974 F.2d at 308. *Bond*, 1 F.3d at 636. Similar considerations underlie the use of prophylactic rules such as those announced in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

Although recognizing that the *Miranda* rules would result in the exclusion of some voluntary and reliable statements, the Court imposed these "prophylactic standards" on the States [citation omitted] to safeguard the Fifth Amendment privilege against self-incrimination.

*Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990).

Under the competence rationale, a *per se* rule is appropriate for the never-been-licensed layman because we can infer that the rule reaches the correct result most of the time. Persons who have not passed the threshold requirements for membership in the bar cannot be expected to provide competent representation, and it is surely true that most laymen could not in fact do so. While some laymen may in fact have the requisite knowledge and skill, the chance that such persons may commit significant errors is great enough that the courts should not risk the possibility that a layman might commit prejudicial errors that would escape an appellate court's notice under a traditional Strickland analysis. A *per se* rule against never-been-licensed laymen is essential to safeguarding the Sixth Amendment right to the effective assistance of counsel.

*Cantu v. State*, 930 S.W.2d 594, 600-601 (Tex. Crim. App. -- 1996)(emphasis added)

The Thirteenth Court of Appeals rejected the *Cantu* argument, said Appellant's reliance on it was misplaced and observed that, "the courts have held that admission to the bar permits a presumption of competence."[5] What appellant is urging and which requires no mental gymnastics is that the Court should hold that rejection to admission to the felony court appointed attorney list permits a presumption of *incompetence* in the trial of felonies.

What appellant is urging and which requires no mental gymnastics is that the Court should hold that rejection to admission to the felony court appointed attorney list permits a presumption of *incompetence* in the trial of felonies.

The Thirteenth Court of Appeals also held:

> We decline appellant's invitation to abandon *Strickland* and to create a new category of fundamental error when a lawyer's name does not appear on a public appointment list."[6]

That is a disingenuous statement by the Court of Appeals, and never was appellant's invitation. Indeed, it would be vacuous to argue that any State court could abandon a due process standard established by the U.S. Supreme Court.

The Court of Appeals treated appellants Texas Fair Defense Act argument as if it were another *Strickland v. Washington* analysis. If by enacting the TFDA, the legislature simply codified *Strickland*, then it was practically a useless act. Courts

---

[5] *Lopez v. State*, No. 13-13-00080-CR, 2015 WL 602007, at *6 (Tex. App. Feb. 12, 2015)
[6] *Lopez v. State*, No. 13-13-00080-CR, 2015 WL 602007, at *6 (Tex. App. Feb. 12, 2015)

13

"do not lightly presume that the Legislature may have done a useless act." *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex.1998)

Holding that the Texas Fair Defense Act requires the adoption of a *per se* rule that appointment of counsel in felony case found to be unqualified for such an appointment constitutes a *per se* deprivation of effective assistance of counsel would result in a rule that reaches the correct result not most of the time, but ***all of the time***.

Consider this: if an attorney who has been deemed qualified by the local District Judges under the TFDA provides marginal or substandard representation to a defendant, the prospective appellant's complaint for ineffective assistance of counsel would most assuredly have to be made under a traditional *Strickland v. Washington* analysis. It would make no sense for an appellant to try and argue that the qualified attorney should not have been deemed qualified under the TFDA when the more efficient argument would be to attack his or her performance at trial under a *Strickland* analysis.

Appellant's representation by an attorney unqualified under the Texas Fair Defense Act was also not the result of any knowingly and intelligently made

14

decision on his part.[7] In the first place, Appellant speaks little English and was represented by an attorney who does not speak Spanish.

In the second place, there is no showing that Appellant knew what being qualified to accept felony appointments meant. *See* RR MNT p. 139 where Thomas Reed acknowledged that in the April 25, 2012 hearing, he could hear Jesse Lopez struggling to understand what Judge Gore was saying. Thus, there was no intelligent waiver of Appellant's rights under the Texas Fair Defense Act in this case.

Furthermore, assuming *arguendo* that there was a waiver, Lopez effectively *withdrew* his waiver of his rights under the TFDA when he sought a continuance of his jury trial so that counsel retained by his family could take over representation in his case.

Yet, he was shackled to his unqualified court appointed attorney, Thomas Reed, when Associate Judge Glynis Gore, on November 30, 2012, refused to allow his December 3, 2012 jury trial setting be continued[8] so that Appellant could

---

[7] At the April 25, 2012 hearing, Associate Judge Glynis Gore, *after* recognizing that Appellant needed a translator, told him in English that Mr. Reed was not on the list of attorneys qualified to accept appointments for felony cases, but that he could agree to keep Mr. Reed as his attorney if he chose. The Appellant, in the recording of the April 25, 2012 hearing which was admitted into evidence as Exhibit A by the State on February 1, 2013, can be heard to say, "'Es, better." (for illustrative purposes, counsel is borrowing vernacular utilized by *Lupe Tortilla*, a restaurant chain popular in the mid to southeast parts of Texas). See RR MNT pp. 131-138 for the Court Reporter's transcription of the audio recording of the April 25, 2012 hearing.

[8] The Defendant's *Motion for Continuance* that Associate Judge Gore denied on November 30, 2012 was his first and only Motion for Continuance. The indictment was filed against the

15

proceed to trial with an attorney retained by his family. The trial court should have seen this train wreck coming.

**Prayer**

Wherefore, premises considered, Jesse Tirado Lopez prays this Honorable Court will grant this petition for discretionary review, reverse the judgment of the Court of Appeals, remand to the Court of Appeals, reverse the judgment of the trial court, or enter any other relief appropriate under the facts and the law.

Respectfully submitted,

Richard W.B. "Rick" Davis
State Bar No. 05539100

504 E. 27th St.
Bryan, Texas 77803

(979) 779-4357 - telephone
(888) 435-4080 - facsimile
rdavis@attorneyrickdavis.com

Attorney for Appellant
Jesse Lopez

Richard W.B. "Rick" Davis
State Bar No. 05539100

---

Defendant on March 22, 2012, eight months and eight days previously. Defendant's case could not be considered an old case by any reasonable stretch of the imagination.

## Certificate of Service

This is to certify that a true and correct copy of the foregoing pleading was mailed to counsel for the State, Jarvis Parsons, District Attorney and Jessica Escue, Assistant District Attorney, 300 East 26th Street, Ste. 310, Bryan Texas, 77803, and the Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas, 78711, on this the 15th day of April, 2015.

_____
Richard W.B. "Rick" Davis
State Bar No. 05539100

# CERTIFICATE OF COMPLIANCE PER T.R.A.P. 9.4(i)(3)

Word Count -

Statistics:

Pages: 10

Words: 2376

Includes textboxes, footnotes, and endnotes

I certify that the above word count is true and correct to the best of my knowledge based on the word count of the computer program used to prepare the document.

_____
Rick Davis

SUBSCRIBED and SWORN TO by Rick Davis this 15th day of April, 2015.

DANIELLE M. CHARRON
Notary Public, State of Texas
My Commission Expires
September 17, 2018

_____
Notary Public, State of TEXAS
My Commission Expires: September 17, 2018

# Appendices

**1 – Appellant's Brief to the Court of Appeals**

**2 – Appellee's Brief to the Court of Appeals**

**3 – The opinion of the Thirteenth Court of Appeals**

No. 13-13-00080-CR

IN THE TEXAS COURT OF APPEALS
13th DISTRICT
AT CORPUS CHRISTI, TEXAS

FILED
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI
10/28/13
DORIAN E. RAMIREZ, CLERK
BY DTello

JESSE TIRADO LOPEZ, Appellant

V.

THE STATE OF TEXAS

DIRECT APPEAL FROM THE
85th DISTRICT COURT OF BRAZOS COUNTY
TRIAL COURT CAUSE NUMBER 12-01541-CRF-85

BRIEF FOR APPELLANT

RECEIVED
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

OCT 2 8 2013

DORIAN E. RAMIREZ, CLERK
BY

Richard W.B. "Rick" Davis, P.C.

By: Rick Davis
State Bar No. 05539100
504 E. 27th Street.
Bryan, Texas 77803
(979) 779-4357
(888) 435-4080 - facsimile

Attorney for Appellant
Jesse Tirado Lopez

RECEIVED
OCT 2 8 2013
13th COURT OF APPEALS

ORAL ARGUMENT REQUESTED

No. 13-13-00080-CR

IN THE TEXAS COURT OF APPEALS
13th DISTRICT
AT CORPUS CHRISTI, TEXAS

JESSE TIRADO LOPEZ, Appellant

V.

THE STATE OF TEXAS

DIRECT APPEAL FROM THE
85th DISTRICT COURT OF BRAZOS COUNTY
TRIAL COURT CAUSE NUMBER 12-01541-CRF-85

BRIEF FOR APPELLANT

Richard W.B. "Rick" Davis, P.C.

By: Rick Davis
State Bar No. 05539100
504 E. 27th Street.
Bryan, Texas 77803
(979) 779-4357
(888) 435-4080 - facsimile

Attorney for Appellant
Jesse Tirado Lopez

<u>ORAL ARGUMENT REQUESTED</u>

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| APPELLANT: | Jesse Tirado Lopez |
| Appellate Counsel: | Richard W.B. "Rick" Davis, P.C.<br>By: Rick Davis<br>504 E. 27th Street Ave<br>Bryan, Texas 77803 |
| Trial Counsel: | Thomas B. Reed<br>P.O. Box 9347<br>College Station, TX 77842-9347 |
| APPELLEE: | The State of Texas |
| Appellate Counsel | Doug Howell<br>Assistant District Attorney<br>300 E. 26th Street, Suite 310<br>Bryan, Texas 77803 |
| Trial Counsel: | John Brick<br>Assistant District Attorney<br>300 E. 26th Street, Suite 310<br>Bryan, Texas 77803 |
| TRIAL JUDGE: | Hon. Dan Beck<br>(sitting by assignment) |

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................. ii

TABLE OF AUTHORITIES .............................................................................. iv

I. STATEMENT OF THE CASE ...................................................................... 1

II. STATEMENT REGARDING ORAL ARGUMENT ................................. 2

III. ISSUES PRESENTED ............................................................................ 2

IV. STATEMENT OF FACTS ......................................................................... 3

V. SUMMARY OF THE ARGUMENT .......................................................... 12

VI. STANDARD OF REVIEW ...................................................................... 13

VII. ARGUMENT .......................................................................................... 14

A. WHETHER APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNTITED STATED CONSITUTION? ............................................................. 14

B. WHETHER APPELLANT'S STATORY RIGHT PER THE TEXAS FAIR DEFENSE ACT TO REPRESENTATION BY A COMPETENT AND QUALIFIED ATTORNEY WAS VIOLATED? ............................................... 24

VIII. CONCLUSION ...................................................................................... 37

IX. PRAYER .................................................................................................. 38

CERTIFICATE OF SERVICE .......................................................................... 38

CERTIFICATE OF COMPLIANCE PER T.R.A.P. 9.4(i)(3) .......................... 39

APPENDIX A ................................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Belcher v. State*, 93 S.W.2d 593, 595 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd)...... 20

*Bitterman v. State*, 180 S.W.3d 139, 142-43 (Tex. Crim. App. -- 2005)..................................... 35

*Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)..................................... 17, 18, 27, 28

*Bulter v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986)..................................................... 20

*Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. -- 1997) ................................................ 28

*Cantu v. State*, 930 S.W.2d 594 (Tex.Cr.App.1996) ........................................... 30, 31, 32, 36

*Castillo v. State*, 751 S.W.2d 521,523 (Tex. App. -- San Antonio  1988, no pet.)..................... 17

*Chadwick v. Green*, 740 F.2d 897 (11<sup>th</sup>Cir. 1984)..................................................... 23

*Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) ..................................................................... 17

*Dickerson v. State*, 87 S.W.3d 623, 637 (Tex. App.—San Antonio 2002, no pet.)..................... 20

*Ex parte Burns*, 601 S.W.2d 370 (Tex. Crim. App. 1980) ..................................................... 21

*Ex parte Ewing*, 570 S.W.2d at 943 ................................................................................ 21

*Ex Parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993)........................................ 18

*Flores v. State*, 576 S.W.2d 632, 634 (Tex. Crim. App. 1979) ............................................... 20

*Golden v. Newsome*, 755 F.2d 1478 (11th Cir. 1985)................................................ 23

*Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir. 1987)................................................. 23

*Hays v. State of Alabama*, 85 F.3d 1492 (11th Cir. 1996)......................................... 23

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986) ........................................... passim

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)............................................. 20

*Javor v. United States*, 724 F.2d 831 (9th Cir. 1994) ..................................................... 21, 22

*Manley v. State*, 23 S.W.3d 172, 173-74 (Tex. App. Waco -- 2000)........................................ 33

*McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)......................................... 18

*Pinkston v .State*, 744 S.W.2d 329, 333 (Tex. App. -- Houston [1st Dist.] 1988, no pet.)... 19, 20

*Sneed v. State*, 964 S.W.2d 764, 766 (Tex. App. Texarkana 1998, no pet.)............................... 18

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................................. passim

*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).............................................. 20

*Tippins v. Walker*, 889 F. Supp. 91 (S.D.N.Y. 1995) ......................................................... 22

## Statutes

Texas Code of Criminal Procedure, Art. 26.04 ................................................................. 25, 27

Texas Fair Defense Act............................................................................................... passim

Texas Penal Code §12.42(d).............................................................................................. 4

Texas Penal Code §22.01(b)(2)(A)....................................................................................... 4

## Constitutional Provisions

U.S. Const. amend. VI....................................................................................... 12, 13, 30, 37

U.S. Const. amend. XIV ......................................................................................... 12, 13, 37

# I.     STATEMENT OF THE CASE

The State of Texas brought this criminal case against Jesse Tirado Lopez in the 85th District Court of Brazos County, Texas. Jesse Lopez was charged with *Assault Family/Household Member with a Previous Conviction.* On December 4, 2012, the jury found him guilty of the charge. The 3rd Degree felony was enhanced to Habitual Offender status since the Appellant had twice before been convicted of Felony *Driving While Intoxicated.*

The punishment phase was tried to the Bench. The Honorable Dan Beck, Visiting Judge Presiding, found the two enhancement paragraphs to be true and sentenced the Appellant to serve 32 years confinement in the Institutional Division of the Texas Department of Criminal Justice on the December 5, 2012. (R.R. Vol. 5, P. 29).

Appellant was indigent and at trial was represented by a lawyer not qualified to receive court appointments in felony cases of any kind.

Appellant, through counsel retained by his family, timely filed a Notice of Appeal and a *Motion for New Trial.* A hearing on the Motion was conducted on February 1, 2013. The Motion was overruled by operation of law. This appeal ensued.

1

## II. STATEMENT REGARDING ORAL ARGUMENT

Due to nature of the case and the fact that this is apparently the first time that the Texas Fair Defense Act has been construed, an oral argument would likely benefit the Court. Oral argument would emphasize and clarify the written arguments in the brief and aid the Court in analyzing and understanding the facts.

## III. ISSUES PRESENTED

A. Whether Appellant received effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution?

B. Whether Appellant's statutory right per the Texas Fair Defense Act to representation by a competent and qualified attorney was violated?

2

## IV.   STATEMENT OF FACTS

The underlying facts of this case involve an argument between two people, Jesse Tirado Lopez and Dora Molina Mendez, who were in a long-term dating relationship together.

On the night of February 14, 2013 and the early morning hours of February 15, 2013, Mr. Lopez and Ms. Mendez went to a couple of local bars together to celebrate Valentine's Day. Throughout the course of the night, the couple consumed several beers. Their night started at a bar called *El Toro*. Mr. Lopez and Ms. Mendez were there for approximately two hours and each had at least two beers while there. From there, the couple went to a bar called Double D's where they both continued to drink alcohol.

Upon leaving Double D's, the couple began arguing about several things. The argument escalated to where both parties became physical with each other. The couple got into Mr. Lopez's truck, and he drove. They traveled to his nephew's house where the arguing continued.

Once there, Mr. Lopez went into the home, and Ms. Mendez remained in the truck parked outside. She continually unlocked the door from the interior of the truck deliberately causing the alarm to go off each time. Shortly thereafter, the police arrived because of the noise disturbance.

The police officer found Ms. Mendez and testified that she appeared distressed. Ms. Mendez claimed that Mr. Lopez had hit her in the face. The

3

officer took her word for it and arrested Mr. Lopez. Jesse Tirado Lopez, the Appellant herein, was initially charged with *Assault – Family Violence*, a Class A Misdemeanor.

An attorney named Thomas Reed was appointed to represent the Appellant. Pursuant to a procedure implemented by the Texas Fair Defense Act, Mr. Reed had been qualified by the five Brazos County elected judges to accept misdemeanor appointments. He was not qualified to accept appointments on any felony cases, notwithstanding his two requests in the early 2000's to be so qualified.

Because the Appellant had been previously convicted of Assault – Family Violence, his new charge was upgraded to a 3rd degree felony pursuant to Texas Penal Code §22.01(b)(2)(A).

Because the Appellant had twice before been convicted of Felony Driving While Intoxicated, the felony charge was enhanced to the habitual felony punishment range pursuant Texas Penal Code §12.42(d). Although Mr. Reed was not qualified to accept appointments for any felony grade offense, he remained on Appellant's case through the conclusion of the jury trial and the Court's punishment hearing.

### *The Trial Court Proceedings*

#### *A.     The Non-Voir Dire*

The *Voir Dire* of the jury panel was conducted on Monday, December 3, 2012.

4

Jury Panelist Palermo said, in response to a question about *Assault Family Violence* with prior convictions and whether or not the prior conviction would cause her to believe the defendant had did what he was accused of in the case on trial, "I guess. I mean, in my mind it's already making me think he probably did it." (RR Vol. 3, p. 25) When asked if she could vote "not guilty" and separate a prior offense from the case on trial, Ms. Palermo also said, "I don't know if I could." (RR Vol. 3, p. 26).

When asked about *Assault Family Violence* with prior conviction and the effect knowledge of a prior conviction would have on her, Jury Panelist Herwald said, "If it was another person, it would be easier to convict them because different people say the same thing." (RR Vol. 3, p. 43).

Jury Panelist Hall, when asked his opinion about *Assault Family Violence* said, "I think family violence – the first offense should be a felony because your family's who you trust and love." (RR Vol. 3, p. 45).

When admonished by the Court about the nature of the law and her obligation to keep an open mind, Jury Panelist Kessel said, "I would like to say he wouldn't be sitting there if he wasn't guilty." (RR Vol. 3, p. 47).

When Jury Panelist Hall was questioned by prosecutor John Brick as to whether he could separate his feelings from the case on trial and base his decision on the evidence, he said, "I don't think I could because I come from a past." (RR Vol. 3, p. 48).

5

Jury Panelist Hyland, when asked whether it would hinder her ability to serve on a jury if she did not know the details of the prior offense said, "I feel as though my rights are being – if I'm serving on a jury, I should have every right to know if this is a pattern that emerged." (RR Vol. 3, p. 50).

When asked about whether she could base her decision on evidence and not speculation (and separate it from any prior experience she had), Jury Panelist Morky said, "No. All of us – we have three quarters of us that raised our hands that have some family instance of this." (RR Vol. 3, p. 53).

When asked as to how she would vote if she was on the jury without having heard any evidence, Jury Panelist Rhea said, "I would say guilty because my son-in-law is a College Station detective and I know how hard he works to bring a case to the court and so he can't bring a case unless he's got all the evidence there for the State to win." (RR Vol. 3, p. 63).

After being admonished by the Court about the need to be fair and impartial, Jury Panelist Yanowski said, "Same with her. Wouldn't have brought up all that info about knowing these types of laws and all that without some – getting in my head about it. So I would have to say guilty right now." (RR Vol. 3, p. 64).

When asked if he could be a good juror by Mr. Reed, Jury Panelist Baldobino said, "No." (RR Vol. 3, p. 79). Likewise Jury Panelists Pfeil, Merchant and Bartholomew said, "No" when asked the same question. *Id.* Similarly, when Mr. Reed asked Jury Panelist Palermo if she could be an impartial juror, she said,

6

"No." (RR Vol. 3, p. 80) Likewise, when asked if she could be an impartial juror by Mr. Reed panelist Ms. Stahl said, "I don't think so." (RR Vol. 3, p. 81).

Finally, when Jury Panelists Ermis and Mader were asked if they could be an impartial juror in this kind of case, they said, "No." (RR Vol. 3, p. 81).

The record does not reflect that Thomas Reed made *any* challenges for cause – not a single one - notwithstanding the plethora of comments by several jurors indicating that they had already disqualified themselves because of bias or prejudice against the Appellant. Mr. Reed, because he made no record of "agreements" with the State on jury selection, left nothing for review and insulated himself from scrutiny. Appellant cites this part of the proceeding in detail as illustrative of the lack of zealous advocacy and, indeed, sloppy representation that his attorney provided him during jury selection. Through the inaction of Appellant's attorney, Appellant is precluded from complaining about any error that may have occurred during jury selection.

### B. The Guilt-Innocence Phase

After jury selection and opening statement, the State presented evidence and rested after calling only three witnesses, Officer Stacy Dowling, the alleged victim Dora Mendez, and Investigator Greg Silber from the District Attorney's office. (RR Vol. 4, p. 90). The Defense rested without putting on any evidence and the State closed behind that. (RR Vol. 4, pp. 92-93).

7

After both sides rested and closed, the jurors were told to come back in about an hour and a half, or at 12:30 p.m. Thus, one can infer that the trial concluded at approximately at 11:00 a.m. on the same morning the State began to present its evidence. (RR Vol. 4, p. 93)[1]. The jury convicted the Appellant.

## C. The Punishment Phase

The punishment phase of the trial was tried to bench the next day. The State proved that the Appellant had twice before been convicted of Felony *Driving While Intoxicated*. Appellant's attorney did not call any character witnesses in his defense. Visiting Judge Dan Beck assessed Appellant's punishment at 32 years confinement in the Institutional Division of the Texas Department of Criminal Justice.

## D. The Hearing on the Motion for New Trial

Appellant timely filed a Notice of Appeal and a Motion for New Trial. A lengthy, comprehensive hearing on Appellant's *Motion for New Trial* was conducted on February 1, 2013.

The first substantive witness to testify at the hearing on the Motion for New Trial was Judge Dana Zachary, the Judge for the Misdemeanor Associate Court in Brazos County (RR MNT p. 21-22)[2]. Associate Judge Glynis Gore presides over

---

[1] The hearing on the *Motion for New Trial* on February 1, 2013 actually took longer than the Guilt/Innocence phase of the trial.

[2] The conversation with Judge Zachary begins on page 15. Inasmuch as she is an officer of the Court and a member of the judiciary, all of her statements should be considered as if having been made under oath, notwithstanding the fact that the oath was administered 6 pages later.

the Felony Associate Court in Brazos County (*Id.* at p. 23). Judge Zachary keeps and maintains the records for attorneys that apply to be put on the court appointed attorney list for Brazos County, Texas (*Id.* at p. 23).

The *Brazos County Indigent Defense Plan* (promulgated pursuant to the Texas Fair Defense Act) was admitted as Defendant's Exhibit No. 1 at the hearing on the *Motion for New Trial*. Brazos County, Texas has three District Courts and two County Courts at Law (*Id.* at p. 22). Admitted as Defendant's Exhibit No. 2 is an exemplar of the Judge's Evaluation form for attorneys who apply to be placed on the list of attorneys qualified (*Id.* at p. 24).

The request form one completes to be placed on the Brazos County approved Court Appointed Attorney's list is divided by the grade of offense for which one can qualify to accept an appointment. An attorney can apply to be qualified to accept appointments in only misdemeanor cases. He or she can also apply to be qualified to accept appointments on what are called "other Felonies" (*Id.* at p. 25). Additionally, the attorney can apply to be qualified to accept "3G" or "Enhanced" felonies (*Id.* at p. 25). The three Brazos County District Judges require that lawyers have greater experience and to have demonstrated greater proficiency and competence in criminal cases before they are approved to accept appointments in "3G" or Enhanced felony cases. (*Id.* at p. 26).

Defendant's Exhibit Number 8, the list of Approved Counsel for Appointment in Criminal and Juvenile Cases in Brazos County, Texas, was

9

admitted at the hearing on the *Motion for New Trial* (*Id.* at p. 27). Thomas Reed is qualified to accept appointments in misdemeanor cases only (*Id.* at p. 28). Judge Zachary initially appointed Mr. Reed to represent Jesse Tirado Lopez because it initially appeared that he was only charged with misdemeanor *Assault Family Violence* (*Id.* at p. 28).

When he applied to be put on the Brazos County Court Appointed Attorney List, Mr. Reed applied to be qualified to accept both misdemeanor and felony appointments (*Id.* at p. 30). The elected Judges of Brazos County qualified him to accept misdemeanor cases (*Id.* at p. 30). He was deemed, however, unqualified to accept court appointments in felony cases, even 3rd Degree felony cases (*Id.* at p. 31). In fact, he was even disqualified to accept court appointments to represent Defendants in State Jail Felony cases (*Id.* at p. 31). After Mr. Reed's application to be qualified to accept court appointments in felony cases was rejected, he applied a second time and was again disqualified (*Id.* at p. 31).

At the hearing on *Motion for New Trial*, the Court received into evidence the "Complaint" sub-folder that Judge Zachary maintained for Thomas Reed. It also received into evidence the evaluation form for Mr. Reed that contains the three District Judge's comments (which contained their opinions why Thomas Reed was not qualified to handle felonies) (*Id.* at p. 32). Visiting Judge Beck admitted the records into evidence but ordered that they be sealed for the Appellate Record (*Id.* at p. 32).

10

Judge Zachary confirmed that, in the Court's file for *State v. Jesse Lopez*, there existed no certification filed by Mr. Reed confirming that he contacted the Appellant, Jesse Lopez, within 72 hours of appointment (or, for that matter, at all) as required by the Brazos County Indigent Defense Plan (*Id.* at p. 34).

Appellant also called Sara Portillo as a witness at the hearing on *Motion for New Trial* (*Id.* at p. 37 *et seq.*) Ms. Portillo testified that she tried to contact Thomas Reed before the trial on many occasions (*Id.* at p. 38). She estimated that she tried to call him four or five times (*Id.* at pp. 38-39).

Ms. Portillo confirmed that Mr. Reed never told her that she could have testified during the punishment phase of the trial to tell about Jesse Lopez' family life, the fact that he is a good father, or anything like that (*Id.* at p. 39). She said that she would have said favorable things about Jesse had she testified at the punishment phase of his trial (*Id.* at p. 39).

Ms. Portillo said that Mr. Reed contacted her about getting clothes for Jesse Lopez the day before his jury trial (*Id.* at pp. 39-40). Although he contacted her to get clothes for the Appellant to wear during the jury trial, Mr. Reed did not have any interest in talking to Ms. Portillo about Jesse, his case, or how she may have been able to help with his defense (*Id.* at p. 40). In fact, Mr. Reed discouraged Ms. Portillo and their children from even coming to trial (*Id.* at p. 40).

Ms. Portillo also testified that Mr. Reed never returned her phone calls and never answered the telephone (*Id.* at p. 41). She said that Jesse Lopez

11

communicated with her prior to trial and expressed his frustration that his own attorney (that is, Mr. Reed) would not contact him or come see him in jail (*Id.* at p. 42).

Ms. Portillo testified that she knew that both of the Mr. Lopez' hands had been broken before trial (*Id.* at p. 45), and that it was hard for him to grab things with his hands after he had injured them (*Id.* at p. 47). Moreover, she testified that Jesse could not have punched anyone with his hands broken.

Appellant seeks a new trial.

## V.    SUMMARY OF THE ARGUMENT

Appellant argues that his Appellant's 6th Amendment[3] right to effective assistance of counsel and 14th Amendment[4] right to due process were violated due to the inaction of the attorney appointed to represent him. Appellant's attorney's representation lacked any zeal, lacked thoroughness and lacked any pretrial preparation. Appellant made repeated requests for his attorney to meet with him. The meetings did not take place. Several phone calls and letters placed or sent, respectively, by both the Appellant and the Appellant's family went unanswered. Appellant's attorney ignored his own client's requests for communication. Appellant further contends that was deprived of effective assistance of counsel at trial by the failure of his appointed attorney to notify him of a plea offer.

---

[3] U.S. Const. amend. VI
[4] U.S. Const. amend. XIV

12

Appellant further argues that court appointed attorney Thomas Reed, although approved for appointment to misdemeanor cases, is and was not a qualified attorney on the Brazos County Court Appointed Attorney list for felony cases and thus was not qualified to handle the Appellant's felony case. Appellant was deprived of his right to representation by an attorney *qualified* to try felony cases under the Texas Fair Defense Act. The deprivation of his rights under the Texas Fair Defense Act also constitutes a *per se* denial of Appellant's 6th Amendment right to effective assistance of counsel and 14th Amendment right to due process.

## VI.    STANDARD OF REVIEW

The proper standard for attorney performance is that of reasonably effective assistance. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and the client was prejudiced by this unreasonable conduct, which was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by the Texas Court of Criminal Appeals of Texas in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986).[5]

---

[5] Appellant declines to assert substantially identical claims under the Texas Constitution in light of the Court of Criminal Appeals' holding that "… [O]ur constitutional and statutory provisions do not create a standard in ineffective assistance cases that is more protective of a defendant's rights than the standard put forward by the Supreme Court in *Strickland*. Accordingly, we will

Appellant urges this Court to hold that the Standard for Review under the Texas Fair Defense Act (hereinafter, the "FDA") is whether or not counsel appointed was qualified per the FDA.

## VII.    ARGUMENT

### A. WHETHER APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNTITED STATED CONSITUTION?

This is a case of flagrantly ineffective assistance of counsel. Mr. Thomas Reed failed to effectively represent Jesse Lopez in the case brought against him for *Assault – Family Violence* (Enhanced). The following is an introductory list of the deficiencies of counsel that will be elaborated on hereafter:

1. Mr. Reed was not approved and qualified to be appointed on felony cases in Brazos County.

2. Not only was Mr. Reed not approved to be appointed to handle "3G" or Enhanced felonies, he was not even approved and qualified to handle State Jail Felonies. In fact, his request to be approved to handle any caliber of felony case was denied twice by the three District Judges of Brazos County, Texas.

---

follow in full the *Strickland* standards in determining effective assistance and prejudice resulting therefrom." *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986).

3. Mr. Reed failed to visit his client, Jesse Lopez, in jail despite his several requests to do so from the Appellant, the Appellant's girlfriend and even the alleged victim.

4. Mr. Reed failed to respond to phone calls placed by Jesse Lopez from jail.

5. Mr. Reed failed to respond to letters sent to him by Jesse Lopez from jail.

6. Mr. Reed acknowledged at the hearing on the Motion for New Trial that he sent no letter to the Magistrate that appointed him confirming that he had contacted Jesse Lopez, although such was required by the Brazos County Indigent Defense Plan.

7. Mr. Reed failed to return several phone calls placed by Sara Portillo, Mr. Lopez's girlfriend, when she called on his behalf.

8. Mr. Reed only spoke to his client at four, possibly five, brief court hearings and at the jury trial; never outside of court.

9. Mr. Reed acknowledged that the only work he did on the case occurred in the court room.

10. Mr. Reed neglected to inform Ms. Portillo that she could have testified as a witness on behalf of Mr. Lopez during the punishment phase of the trial.

11. In fact, Mr. Reed actually discouraged Ms. Portillo and their children from coming to the trial despite the fact that she could have and would have testified that Mr. Lopez was a good father and a good man.

15

12. Mr. Reed admitted that the only time he contacted Ms. Portillo was to get clothes for the Mr. Lopez to wear during trial.

13. Mr. Reed failed to ever speak with Dora Mendez, the alleged victim in this case, despite her numerous attempts to contact Mr. Reed on Mr. Lopez's behalf before the trial.

14. Mr. Reed admitted that the only time he ever spoke with Dora Mendez was during cross examination at trial.

15. Mr. Reed never visited the scene where the offense that was the subject of Mr. Lopez's trial supposedly occurred.

16. Mr. Reed never visited the scene where Appellant was arrested.

17. Mr. Reed failed to call any witnesses in Appellant's defense at trial.

18. In fact, Mr. Reed failed to put on *any* evidence in Appellant's defense at trial.

19. Mr. Reed failed to prove to the jury that Appellant's hands were deformed from a prior injury to the point that he could not possibly have hit the victim without causing further injury to himself.

20. Mr. Reed failed to properly communicate to Appellant the State's plea offer and what charge the State was offering to allow him to plead to.[6]

---

[6] Mr. Reed also failed to sign and return a *Motion to Substitute Counsel* until the week of Thanksgiving and almost a month after it was first sent to him, leaving new Counsel without adequate time to prepare for a trial on December 3, 2012.

16

This is plain error, that is, error that is both apparent on the face of the trial record and that error clearly had an adverse impact upon the substantial rights of the Appellant. The ineffectiveness of counsel resulted in the accused not receiving a fair trial. Thomas Reed, Appellant Jesse Lopez' attorney at trial, was physically present, but completely absent in effort.[7]

If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. *Castillo v. State*, 751 S.W.2d 521,523 (Tex. App. -- San Antonio 1988, no pet.) The Sixth Amendment guarantees competent representation. Counsel deprives a Defendant of the right to effective assistance simply by failing to render "adequate legal assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).

The United States Supreme Court has established a two-part test to determine whether counsel was ineffective. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Applicant must prove (1) his trial counsel's representation was deficient and (2) his trial counsel's deficient performance was so serious that it prejudiced his defense. *Id. at 686-687*; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To establish deficient performance, Applicant must prove by a

---

[7] Lawyer Brendan Sullivan received international media attention in his role as defense counsel to Iran-Contra affair figure Oliver North. During the ensuing congressional hearings, chairman Daniel Inouye suggested that North should speak for himself, because he had wearied of Sullivan's constant objections to questions put to North. Sullivan responded, "Well, sir, I'm not a potted plant. I'm here as the lawyer. That's my job." Thomas Reed's representation of Jesse Lopez will be shown herein to have approached the level of a potted plant.

17

preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms, and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Id.*

Applicant must identify specific acts or omissions of counsel that constitute the alleged ineffective assistance and affirmatively prove that they fell below the professional norm for reasonableness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998) (citing *Strickland*, 466 U.S. at 690). The alleged ineffectiveness must be firmly founded in the record. *Bone*, 77 S.W.3d at 835. If Applicant fails to satisfy either prong of the test, the court does not need to consider the remaining prong. *Strickland*, 466 U.S. at 687.

Texas courts adhere to this United States Supreme Court's two pronged *Strickland* test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The Defendant must first show that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. (*see Sneed v. State*, 964 S.W.2d 764, 766 (Tex. App. Texarkana 1998, no pet.); (*see also, Ex Parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993)). Second, assuming Appellant has demonstrated deficient

18

assistance, it is necessary to affirmatively prove prejudice. *Strickland v. Washington*, 466 U.S. 689, 693 (1984).

In other words, Appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez*, 726 S.W.2d at 55. This two pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable and just result. *Strickland*, 466 U.S. at 686.

Ordinarily, if counsel's errors were so obviously unprofessional, as in the present case, then there should be no need for an explanation of his subjective intent. In such situations, Appellant is able to bring a direct appeal and obtain a judgment by the Appellate Court. *See Pinkston v. State*, 744 S.W.2d 329, 333 (Tex. App. -- Houston [1st Dist.] 1988, no pet.). In the instant case, though, to Appellant's disappointment, the Honorable Trial Judge allowed Appellant's *Motion for New Trial* to be overruled by operation of law, he at least allowed an extremely detailed record at the hearing thereon to be developed.[8]

Judicial scrutiny of counsel's performance must be highly deferential, and the Court will indulge a strong presumption that counsel was effective. *Id.* at 689;

---

[8] Indeed, the hearing on the *Motion for New Trial* lasted about as long as or longer than the entire guilt/innocence phase of the trial.

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The Court will presume counsel's actions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 689 (stating that a fair assessment of attorney performance requires every effort to eliminate the distorting effect of hindsight and to evaluate the conduct from counsel's perspective at the time of trial).

Applicant must overcome this presumption by illustrating why counsel did what he did. *Belcher v. State*, 93 S.W.2d 593, 595 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd). When evaluating an allegation of ineffective assistance, the Appellate Court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The fact that another attorney may have acted in a different manner will not be sufficient to prove ineffective assistance, and an error in trial strategy will be considered inadequate only if counsel's actions lack any plausible basis. *Dickerson v. State*, 87 S.W.3d 623, 637 (Tex. App.—San Antonio 2002, no pet.).

The duty to investigate cannot be delegated to an investigator or to the prosecutor. *Flores v. State*, 576 S.W.2d 632, 634 (Tex. Crim. App. 1979); *Bulter v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986). Counsel must make an independent investigation into the facts. *See Pinkston v. State*, 744 S.W.2d 329, 332 (Tex. App.—Houston [1st Dist.] 1988) (attorney has a duty to make an independent investigation of his client's case; counsel is ineffective if the consequence is that a viable defense available to the client is not advanced).

20

The next inquiry is prejudice. To determine prejudice, for guidance courts look again to *Strickland*, where the United States Supreme Court made it clear that although the burden upon the Appellant is high, a criminal Defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 455 U.S. at 693, 104 S. Ct. at 2068. In fact, "in every case the court should be concerned with whether, despite the strong presumption of reliability [of the trial's outcome], the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

An assertion of ineffective assistance of counsel will be sustained only if the record affirmatively supports such a claim. *Ex parte Ewing*, 570 S.W.2d at 943. Moreover, matters of trial strategy will be reviewed only if an attorney's actions are without a plausible basis. *Ex parte Burns*, 601 S.W.2d 370 (Tex. Crim. App. 1980). Appellant urges that near complete inaction can *never* be a sound trial strategy.

A presumption of prejudice applies where, as here, counsel's actions are the equivalent of no legal assistance at all.

In *Javor v. United States*, 724 F.2d 831 (9th Cir. 1994), the court held:

Today we conclude that when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary [citations omitted]. Javor's Sixth Amendment right to counsel was violated not because of specific legal errors or omissions

21

indicating incompetence, but because he had no legal assistance during a substantial portion of his trial ....

. . .

Prejudice is inherent in this case because unconscious or sleeping counsel is equivalent to no counsel at all. The mere physical presence of an attorney does not fulfill Sixth Amendment entitlement to the assistance of counsel... [A]n attorney's absence prejudices a defendant more by *what was not done* than by what was done.

*Id.* at 833 (emphasis added).

Appellant submits that having an unqualified attorney who committed the actions and inactions fully delineated above in 20 numbered paragraphs in the Argument section I. of this brief, was the "equivalent to no counsel at all." Appellant's unqualified attorney's silence and inaction before and during the trial prejudiced Appellant more "by *what was not done* than by what was done".

In *Tippins v. Walker*, 889 F. Supp. 91 (S.D.N.Y. 1995), the Court granted the writ of habeas corpus when counsel slept through much of the trial:

Accordingly, as the Second Circuit has accepted *Javor's* holding that sleeping counsel is tantamount to no counsel at all, this Court holds that Tirelli's sleeping constituted a *per se* violation of petitioner's Sixth Amendment right to effective assistance of counsel. The Court rejects the law espoused by the [lower state courts] that petitioner must demonstrate that he was prejudiced by the fact of his counsel's slumber.

*Id.* at 94.

Likewise, under the unique facts of this case, Appellant should not have to demonstrate specific prejudice (though, in fact, he has done so). Rather, prejudice

22

must be presumed by counsel's near complete inaction and Appellant is entitled to a new trial.

Other cases in which courts have held counsel to be *per se* ineffective are *Hays v. State of Alabama*, 85 F.3d 1492 (11th Cir. 1996) (prejudice presumed when counsel absent, prevented from assisting during critical state, or if counsel failed to subject prosecution's case to meaningful adversarial testing); *Golden v. Newsome*, 755 F.2d 1478 (11th Cir. 1985) (absence of counsel is presumptively prejudicial); *Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir. 1987)(*vacated on other grounds, Arn v. Green* (1987) 484 U.S. 806) (temporary absence of counsel during critical stage is prejudicial *per se* and not subject to harmless error inquiry); *Chadwick v. Green*, 740 F.2d 897 (11thCir. 1984) (circumstances which would warrant a presumption of prejudice from counsel's ineffectiveness are those in which adversary process itself is rendered presumptively unreliable by the circumstances).

In *Strickland v. Washington*, 466 U.S. 668, 696 (1984) the United States Supreme Court concluded its analysis of ineffective assistance of counsel claims with this caveat:

> Although those [foregoing] principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is

23

unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Strickland*, 466 U.S. 696 (emphasis added).

Here, there was just such a breakdown in the adversarial process, rendering the result of Appellant's trial unreliable. It is difficult to imagine a more egregious case of incompetent counsel than the case here.

## B. WHETHER APPELLANT'S STATORY RIGHT PER THE TEXAS FAIR DEFENSE ACT TO REPRESENTATION BY A COMPETENT AND QUALIFIED ATTORNEY WAS VIOLATED?

The Texas Fair Defense Act (the "FDA"), passed in 2001, for the first time, required all criminal courts in Texas to adopt formal procedures for providing appointed lawyers to indigent defendants.

> These procedures must be consistent in all courts of the same jurisdiction within any particular county (e.g., all district (felony) courts in a county must adopt consistent procedures), and counties may adopt unified procedures that apply to all criminal courts (felony and misdemeanor) in a county. ...
> Although the FDA gives local officials significant flexibility in establishing their indigent defense plans, every plan is required to meet minimum statewide standards and/or specify local procedures in the following areas:
> - Prompt appointment of defense counsel
> - Methods for selecting defense lawyers eligible to receive court appointments, including qualification standards
> - Methods for selecting defense lawyers for appointment in specific cases
> - Methods for determining defendant eligibility for appointment of counsel (indigence standards)
> - Fee schedules for payment of appointed defense lawyers
> - Compensation procedures for experts and investigators in cases involving indigent defendants

24

The FDA also created a new state indigent defense commission, the Task Force on Indigent Defense, to oversee the implementation of the FDA and administer a new state program for awarding indigent defense grants to counties.[9]

The Texas Fair Defense Act modified several statutes, most notable of which was the Texas Code of Criminal Procedure. Texas Code of Criminal Procedure, Art. 26.04 provides, in pertinent part:

(a) The judges of the county courts, statutory county courts, and district courts trying criminal cases in each county, by local rule, shall adopt and publish written countywide procedures for timely and fairly appointing counsel for an indigent defendant in the county arrested for, charged with, or taking an appeal from a conviction of a misdemeanor punishable by confinement or a felony. The procedures must be consistent with this article and Articles 1.051, 15.17, 26.05, and 26.052. A court shall appoint an attorney from a public appointment list using a system of rotation, unless the court appoints an attorney under Subsection (f), (f-1), (h), or (i). The court shall appoint attorneys from among the next five names on the appointment list in the order in which the attorneys' names appear on the list, unless the court makes a finding of good cause on the record for appointing an attorney out of order. An attorney who is not appointed in the order in which the attorney's name appears on the list shall remain next in order on the list.

(b) Procedures adopted under Subsection (a) shall:
(1) authorize only the judges of the county courts, statutory county courts, and district courts trying criminal cases in the county, or the judges' designee, to appoint counsel for indigent defendants in the county;
(2) apply to each appointment of counsel made by a judge or the judges' designee in the county;
(3) *ensure that each indigent defendant* in the county who is charged with a misdemeanor punishable by confinement or with a felony and who

---

[9] "Texas Fair Defense Project." *Texas Fair Defense Project*. Texas Fair Defense Project, n.d. Web. 13 Oct 2013. <http://www.texasfairdefenseproject.org/info/right_to_counsel/texas_fair_defense>

25

appears in court without counsel *has an opportunity to confer with appointed counsel before the commencement of judicial proceedings*;

(4) require appointments for defendants in capital cases in which the death penalty is sought to comply with any applicable requirements under Articles 11.071 and 26.052;

(5) *ensure that each attorney appointed from a public appointment list to represent an indigent defendant perform the attorney's duty owed to the defendant in accordance with the adopted procedures*, the requirements of this code, and applicable rules of ethics; and

(6) *ensure that appointments are allocated among qualified attorneys* in a manner that is fair, neutral, and nondiscriminatory.

(c) Whenever a court or the courts' designee authorized under Subsection (b) to appoint counsel for indigent defendants in the county determines for purposes of a criminal proceeding that a defendant charged with or appealing a conviction of a felony or a misdemeanor punishable by confinement is indigent or that the interests of justice require representation of a defendant in the proceeding, the court or the courts' designee shall appoint one or more practicing attorneys to represent the defendant in accordance with this subsection and the procedures adopted under Subsection (a). If the court or the courts' designee determines that the defendant does not speak and understand the English language or that the defendant is deaf, the court or the courts' designee shall make an effort to appoint an attorney who is capable of communicating in a language understood by the defendant.

(d) A public appointment list from which an attorney is appointed as required by Subsection (a) shall contain the names of qualified attorneys, each of whom:

(1) applies to be included on the list;

(2) meets the *objective qualifications* specified by the judges under Subsection (e);

(3) meets any applicable qualifications specified by the Texas Indigent Defense Commission; and

(4) is approved by a majority of the judges who established the appointment list under Subsection (e).

(e) In a county in which a court is required under Subsection (a) to appoint an attorney from a public appointment list:

(1) the judges of the county courts and statutory county courts trying misdemeanor cases in the county, by formal action:

(A) shall:

26

(i) establish a public appointment list of attorneys qualified to provide representation in the county in misdemeanor cases punishable by confinement; and

(ii) specify the objective qualifications necessary for an attorney to be included on the list; and

(B) may establish, if determined by the judges to be appropriate, more than one appointment list graduated according to the degree of seriousness of the offense, the attorneys' qualifications, and whether representation will be provided in trial court proceedings, appellate proceedings, or both; and

**(2) *the judges of the district courts trying felony cases in the county, by formal action:***

**(A) shall:**

**(i) establish a public appointment list of attorneys qualified to provide representation in felony cases in the county; and**

**(ii) specify the objective qualifications necessary for an attorney to be included on the list; and**

(B) may establish, if determined by the judges to be appropriate, more than one appointment list graduated according to the degree of seriousness of the offense, the attorneys' qualifications, and whether representation will be provided in trial court proceedings, appellate proceedings, or both.[10]

Appellant is mindful that, "[u]nder most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

---

[10] Emphasis in Article 26.04 was added by counsel for illustrative purposes.

27

However, in this case, the hearing on the *Motion for New Trial* that took place on February 1, 2013 actually took *longer* than the entire Guilt/Innocence phase of the trial[11]. Furthermore, Appellant contends that his rights under the Texas Fair Defense Act were violated, an argument that was not advanced or considered in *Bone*.

Appellant's counsel has found a few reported cases that cite the Texas Fair Defense Act tangentially, but none where a complaint was based on a pellucidly clear, incontrovertible, flagrant violation of the FDA as this case presents. Appellant urges this Court to hold that, in enacting the FDA, the Texas legislature created an ***objective standard*** for qualification of and appointment of counsel for indigent defendants.

Historically, cases analyzed under *Strickland* have historically been done on a case by case basis.

In *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. -- 1997), the Court stated, "Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis."

---

[11] The length of time allowed for the hearing on the *Motion for New Trial* on February 1, 2013 is a credit to the patience of and thoroughness of the visiting Judge, the Hon. Dan Beck.

28

The result of this analytical approach has been to create an almost impossible hurdle for Appellants to overcome when complaining about grossly deficient performance by court appointed counsel unless it is what the Supreme Court labels "structural." Moreover, many Appellants could meet *Strickland's* first prong – that is that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. But *Strickland's* second prong – that is there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different is virtually an impossible burden to meet. Even the qualification that "A reasonable probability is a probability sufficient to undermine confidence in the outcome" provides little help since whose confidence must be undermined is not defined and is thus also subjective. While the first prong speaks of objective standards, the second prong language is inherently subjective, ephemeral and nebulous. One can never truly know what may have been.

Appellant urges this Court to hold either that by enacting the FDA, the legislature has eliminated the need to meet the second prong of *Strickland* when court appointed counsel is by judicial pronouncement deemed unqualified, or that the enactment of the FDA necessarily made appointment of an unqualified attorney to represent an indigent defendant a structural defect which eliminates the harm analysis that would otherwise be required. In other words, appointment of an

29

unqualified attorney should be considered fundamental error under the Texas Fair Defense Act.

In *Cantu v. State*, 930 S.W.2d 594 (Tex.Cr.App.1996), the Court of Criminal Appeals reversed this honorable Court when it addressed the issue of whether a lawyer's suspension for failing to respond to demands from the State Bar Grievance Committee for information deprived the defendant of his Sixth Amendment right to effective assistance of counsel.

The Court in *Cantu* held that, as matters of first impression: (1) a never been licensed layman can never be considered "counsel" under Sixth Amendment and representation by such person will always constitute a denial of counsel; (2) a suspended or disciplined attorney is incompetent as a matter of law if reasons for the discipline imposed reflect so poorly upon attorney's competence that it may reasonably be inferred that attorney was incompetent to represent defendant; and (3) the defendant's attorney who was suspended for failing to respond to demands from State Bar Grievance Committee for information was not incompetent as a matter of law and accordingly, defendant did not establish a complete denial of his right to counsel.

Appellant urges this Court that his representation by a court appointed attorney who had been deemed unqualified to accept felony appointments is virtually identical to the second of three categories defined above. Just as it may be inferred that an attorney disciplined for incompetence was incompetent to

30

represent a particular defendant, it may and should be inferred that an attorney found to be unqualified to accept felony appointments for indigent defendants under the FDA was incompetent and unqualified to represent this Appellant.

*Cantu* contains an interesting and lengthy discussion of why a *per se* rule should exist when a defendant is represented by a non-lawyer even though that was not the precise issue before the Court. The Court, in addressing judicial reticence of adoption of *per se* rules, observed:

> While the competence rationale can support a case-by-case determination of incompetence as a matter of law, we do not believe that the rationale can support a *per se* rule that suspended or disbarred counsel constitutes an automatic Sixth Amendment violation. The Supreme Court has explained that per se rules should apply only when they will usually reach the correct result as an empirical matter:
>
>> [Per se rules are] designed to avoid the costs of excessive inquiry where a per se rule will achieve the correct result in almost all cases. As we explained in a different context: "Per se rules ... require the Court to make broad generalizations.... Cases that do not fit the generalization may arise, but a per se rule reflects the judgment that such cases are not sufficiently common or important to justify the time and expense necessary to identify them." [Citation omitted]. Per se rules should not be applied, however, in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time.
>
> *Coleman v. Thompson*, 501 U.S. 722, 737, 111 S.Ct. 2546, 2558, 115 L.Ed.2d 640 (1991). *See also Bellamy*, 974 F.2d at 308. *Bond*, 1 F.3d at 636. Similar considerations underlie the use of prophylactic rules such as those announced in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):
>
>> Although recognizing that the *Miranda* rules would result in the exclusion of some voluntary and reliable statements, the Court

31

imposed these "prophylactic standards" on the States [citation omitted] to safeguard the Fifth Amendment privilege against self-incrimination.

*Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990).

Under the competence rationale, a *per se* rule is appropriate for the never-been-licensed layman because we can infer that the rule reaches the correct result most of the time. Persons who have not passed the threshold requirements for membership in the bar cannot be expected to provide competent representation, and it is surely true that most laymen could not in fact do so. While some laymen may in fact have the requisite knowledge and skill, the chance that such persons may commit significant errors is great enough that the courts should not risk the possibility that a layman might commit prejudicial errors that would escape an appellate court's notice under a traditional Strickland analysis. A *per se* rule against never-been-licensed laymen is essential to safeguarding the Sixth Amendment right to the effective assistance of counsel.

*Cantu v. State*, 930 S.W.2d 594, 600-601 (Tex. Crim. App. -- 1996).

Holding that the Texas Fair Defense Act requires the adoption of a *per se* rule that appointment of counsel in felony case found to be unqualified for such an appointment constitutes a *per se* deprivation of effective assistance of counsel would result in a rule that reaches the correct result not most of the time, but *all of the time.*

Consider this: if an attorney who has been deemed qualified by the local District Judges under the FDA provides marginal or substandard representation to a defendant, the prospective appellant's complaint for ineffective assistance would most assuredly have to be made under *Strickland v. Washington.* It would make no sense for him to try and argue that the qualified attorney should not have been

32

deemed qualified when the more efficient argument would be to attack his or her performance at trial under a *Strickland* analysis.

Appellant's representation by an attorney unqualified under the Texas Fair Defense Act was also not the result of any knowingly and intelligently made decision on his part.[12] In the first place, Appellant speaks little English. In the second place, there is no showing that Appellant knew what being qualified to accept felony appointments meant. *See* RR MNT p. 139 where Thomas Reed acknowledged that in the April 25, 2012 hearing, he could hear Jesse Lopez struggling to understand what Judge Gore was saying.

Arguing by analogy, the Court in *Manley v. State*, 23 S.W.3d 172, 173-74 (Tex. App. Waco -- 2000), when discussing an accused's right to self-representation observed:

> The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. U.S. Const. Amend. VI; Tex. Const. Art. I, §10. However, this right to counsel may be waived, and the defendant may choose to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). Although the right to self-representation is absolute, a waiver of the right to counsel will not be "lightly inferred," and the courts will indulge every reasonable

---

[12] At the April 25, 2012 hearing, Associate Judge Glynis Gore, *after* recognizing that Appellant needed a translator, told him in English that Mr. Reed was not on the list of attorneys qualified to accept appointments for felony cases, but that he could agree to keep Mr. Reed as his attorney if he chose. The Appellant, in the recording of the April 25, 2012 hearing which was admitted into evidence as Exhibit A by the State on February 1, 2013, can be heard to say, "'Es, better." (for illustrative purposes, counsel is borrowing vernacular utilized by *Lupe Tortilla*, a restaurant chain popular in the mid to southeast parts of Texas). For the convenience of the Court, the uncertified transcript of that hearing is attached as Appendix A. See RR MNT pp. 131-138 for the Court Reporter's transcription of the audio recording of the April 25, 2012 hearing.

33

presumption against the validity of such a waiver. *George v. State*, 9 S.W.3d 234, 236 (Tex.App.—Texarkana 1999, no pet.) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Jordan v. State*, 571 S.W.2d 883, 884 (Tex.Crim.App.1978)).

How does a court decide whether a valid waiver of counsel exists? *Faretta* requires that (1) the appellant make a "knowing and intelligent" waiver; and (2) the appellant must be made aware of the "dangers and disadvantages of self-representation." *Id.* (citing Tex. Code Crim. Proc. Ann. art. 1.051 (Vernon Supp.1999)); *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. To decide whether a defendant's waiver is knowing and intelligent, the court must make an inquiry, evidenced by the record, which shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. *George*, 9 S.W.3d at 237 (citing Archie v. State, 799 S.W.2d 340, 344 (Tex.App.—Houston [14th Dist.] 1990), aff'd, 816 S.W.2d 424 (Tex.Crim.App.1991)). The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver. *Id.*

Likewise, there was no intelligent waiver of Appellant's rights under the Texas Fair Defense Act in this case.

Further, as a matter of anticipatory rebuttal, Appellant addresses the possibility that the State may argue that he waived his complaint that he was not represented by a qualified attorney in violation of his rights under the Texas Fair Defense Act. In the first place, such a contention would be disingenuous. The Appellant speaks little English and was represented by an attorney who does not speak Spanish. He was also shackled to his court appointed attorney, Thomas Reed, when Associate Judge Glynis Gore, on November 30, 2013, refused to allow

34

his December 3, 2012 jury trial setting be continued[13] so that Appellant could proceed with an attorney retained by his family.

Moreover, the Appellant asserted his complaint in detail in his *Motion for New Trial* and hearing thereon, which was the first logical opportunity for him to do so. Arguing by analogy, in construing the timeliness of an Appellant's complaint about a breached plea agreement which was first raised in a motion for new trail, the Court of Criminal Appeals, in *Bitterman v. State*, 180 S.W.3d 139, 142-43 (Tex. Crim. App. -- 2005) observed:

> The State also relies on these cases in its brief, citing them for the proposition that Appellant should have objected at a time when the trial court had an opportunity to correct the error. In addition, the State points to *Mendez v. State* to support its argument that a defendant must make a timely objection or he fails to preserve error. However, reliance on this case is misplaced for two reasons. First, the facts in Mendez involved a defendant, after a trial by jury and sentencing, who claimed that the trial court should have *sua sponte* withdrawn the guilty plea he entered due to new testimony which raised an issue as to his guilt. This is distinguishable from the case at hand, which involves not the withdrawal of a plea made by the defendant at trial, but the withdrawal of a plea agreement after this agreement was breached by the State.
>
> Secondly, even if this Court were to find *Mendez* persuasive in this case, the defendant in *Mendez* did not raise the issue until his appeal to the court of appeals. In this case, it is clear from the record that Appellant raised the issue for the first time at the trial level, at the hearing on the motion for a new trial. This was the first time that the issue could have been cured, and thus the first time that it made sense to raise the issue. Even if the Appellant had objected at the time of the breach of the plea agreement, the error could not have been cured by the trial judge at that time because the prosecutor's

---

[13] The Defendant's *Motion for Continuance* that Associate Judge Gore denied on November 30, 2012 was his first and only Motion for Continuance. The indictment was filed against the Defendant on March 22, 2012, eight months and eight days previously. Defendant's case could not be considered an old case by any reasonable stretch of the imagination.

35

recommendation was already before the judge to consider. Objecting at that point would be similar to asking the judge to forget everything the prosecutor had just told him and make the sentencing decision based only on the testimony of the defense. There was no attempt at an "end-run" around the trial judge straight to the court of appeals. Raising the objection for the first time at a motion for a new trial gave the trial judge notice of the breach, and gave him an opportunity to correct the error by granting Appellant's motion for a new trial. Neither the court of appeals nor the State cite any caselaw requiring a defendant who has pled guilty as part of an agreement with the State to object at the moment of the breach rather than at a motion for a new trial. Rather, this Court has simply held, as have a number of courts of appeals, that in this same fact scenario, the defendant is entitled either to specific performance or to withdraw his plea if the State has breached a plea agreement. The Appellant in this case chose to request a new trial in order to compel specific performance of the agreement into which he and the State entered.

In light of all of the foregoing, Appellant urges this Honorable Court to reverse his conviction and remand the case for a new trial.

It has been uniformly recognized that a layman masquerading as an attorney—that is, one who has never been a licensed attorney in any jurisdiction— can never be considered "counsel" under the Sixth Amendment regardless of the skill exercised by the layman. *Cantu v. State*, 930 S.W.2d 594, 596 (Tex. Crim. App. 1996).

The Courts acknowledge that representation by one not licensed to practice law is the same as no representation at all. Appellant urges this Court to hold that representation by even a licensed attorney who failed to meet the *objective standards* established to qualify one to accept court appointments in felony cases

36

under the Texas Fair Defense Act is functionally equivalent to no representation under either the Sixth Amendment to the United States Constitution or under the Texas Fair Defense Act. Indeed, Appellant was represented by a lawyer who was twice deemed to be unqualified to receive felony appointments by Brazos County's District Judges.

## VIII.     CONCLUSION

**Issue No. 1:** The Appellant's 6th Amendment right to effective assistance of counsel and 14th Amendment right to due process were violated due to the inaction of the attorney appointed to represent him. Appellant's attorney's representation fell below an objective standard of reasonableness under prevailing professional norms and the client was prejudiced by this unreasonable conduct, which was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by the Texas Court of Criminal Appeals of Texas in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986).

**Issue No. 2:** Appellant's right to representation by a qualified attorney under the Texas Fair Defense Act was violated and constitutes reversible error.

**This Court should REVERSE Appellant's conviction and grant him a new trial.**

37

## IX.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays this honorable

Court reverse and remand this case for a new trial, and to enter any other relief

appropriate under the facts and the law.

Respectfully submitted,

Richard W.B. "Rick" Davis, P.C.

By: Rick Davis
State Bar No. 05539100
504 E. 27th Street.
Bryan, Texas 77803
(979) 779-4357
(888) 435-4080 - facsimile
Attorney for Appellant Jesse Tirado Lopez

## CERTIFICATE OF SERVICE

I, Rick Davis, counsel for Appellant, do hereby certify that a true and correct copy of the foregoing document was hand delivered to counsel for the State, Doug Howell and Jeff Garon, Assistant District Attorneys, Brazos County, Texas at 300 E. 26th Street, Suite 310, Bryan, Texas, 77803, on this the 25 day of October, 2013.

Rick Davis
State Bar No. 05539100

38

# CERTIFICATE OF COMPLIANCE PER T.R.A.P. 9.4(i)(3)

Word Count -

Statistics:

| | |
|---|---|
| Pages: | 38 |
| Words: | 9,751 |
| Paragraphs: | 199 |
| Lines: | 906 |

Includes textboxes, footnotes, and endnotes

I certify that the above word count is true and correct to the best of my knowledge.

_____
Rick Davis

SUBSCRIBED and SWORN TO by Rick Davis this 25 day of October, 2013.

_____
Notary Public, State of TEXAS
My Commission Expires: July 27, 2016

ROBYN E. SEGAL
Notary Public, State of Texas
My Commission Expires
July 27, 2016

39

## APPENDIX A

**Uncertified Transcript of April 25, 2013 Hearing**

April 25, 2012 Hearing in *State v. Jesse Lopez*

Judge Gore: Alright, you are Jesus Lopez

Jesse Lopez:   Jesse

Mr. Reed: Your honor we are a little uncertain whether the name is incorrect on the indictment or he...

Judge Gore: I'm going to get to that

Judge Gore: It says here Jesus Lopez also known as Jesse Rodriguez (something is said followed by Rodriguez again)

Jesse Lopez: No my name is Jesse Lopez

Judge Gore: I'll get to that in just a minute

Judge Gore: Cause number 12-01541-CRF-85 you have been charged by indictment with assault family member with previous convictions and enhancements that will truly make this a habitual offender case

Judge Gore: Your name is spelt two different ways here – I'm going to ask you to look at the indictment and tell me is one of these correct, do you go by Jesse Rodriguez

Jesse Lopez: I've never gone by Jesse Rodriguez, like I told you can go in now –

Judge Gore: How do you say what is your name?

Jesse Lopez: Jesse Lopez Rodriguez –

Judge Gore: Lopez – Jesse Lopez

Jesse Lopez: the Rodriguez has nothing to do with _____ though, see right here no

Judge Gore: Jesse Lopez is what your name is

Jesse Lopez: My name is Jesse Lopez Tirado, like I told him right here now

Judge Gore: How do you spell Jesse? J-E-S-S-E?

Jesse Lopez: Un huh, like I told him right here now, - right here –this is not my license number, I can give my social security number

Judge Gore: Your name is Jesse? J-e-s-s-e

Jesse Lopez: Uh huh

Judge Gore: Yes or no please

Judge Gore: J-e-s-s-e Lopez L-o-p-e-z

Jesse Lopez: yes ma'am

Judge Gore: and did you say another name?

Jesse Lopez: Tirado

Mr. Reed: Tirado– I believe is his middle name your honor

Judge Gore: Just his middle name – alright

Judge Gore: Jesse Lopez is now corrected

Jesse Lopez: – what is the _____

Judge Gore: Also known as Jesse Rodriguez – the state may leave that if they choose to do so, they have to prove one name or another

Judge Gore: Ok, that is up to them as long as the name – you are being arraigned today your saying your name is Jesse Lopez -

Jesse Lopez: Lopez Tirado

Judge Gore: Check what I have there – is it correctly spelt?

Jesse Lopez: Jesse Lopez – it ain't got no no Rodriguez no _____

Judge Gore: I got all that – so Tirado is your middle name?

Jesse Lopez: My momma's name

Judge Gore: ok so Jesse Lopez is your correct name?

Jesse Lopez: Yes ma'am

Judge Gore: Alright, Mr. Lopez you have been charged as I stated with these charges is it necessary to have these read to you out loud?

Judge Gore: Do you understand what you are [Mr. Reed: No your honor] charged with

Jesse Lopez: No I don't

Judge Gore: Do you understand what you are charged with?

Jesse Lopez: No

Judge Gore: I'm not asking you if you agree, I'm asking you if you understand

Jesse Lopez: Well see, but, because they they they they _____ case

Judge Gore: Sir let me explain something to you, this is arraignment, you don't want to tell me about your case because this is a prosecutor and anything you say to me can be used against you in trial, I just need to know do you understand what you are being charged with and do I need to have it read to you out loud?

Mr. Reed: Do you understand they are charging you with the assault case – [Lopez: no] - the assault bodily injury – that's what she is asking, do you know what your charge is – or does she

Judge Gore: You know what – do you speak English?

Jesse Lopez: Not really

Judge Gore: Do you need this read to you in Spanish?

Jesse Lopez: It's better

Judge Gore: We'll reset it for an interpreter case – and the interpreter uh, because the interpreter will read it to you in Spanish so that he fully understands – well reset it as soon as we can – maybe __ do we have another date next week? That the interpreter can be here? I'll see if she can be here

Judge Gore: The other thing I do want to adivse you about... Mr. Reed were you appointed on Misdemeanors on his case?

Mr. Reed: Um, I believe when it was initially filed, uh, as the initial assault case, I believe I was appointed at that time.

Judge Gore: Mr. Reed is not on the felony appointment list so he will remain your attorney by your consent, do you wish to have Mr. Reed stay on your case?

Jesse Lopez: that' (inaudible)

Judge Gore: Alright we will reset this for next Wednesday and we will try _____ I'll send a notice to jail. When you come back to court we will have an interpreter.

# RICHARD W. B. "RICK" DAVIS, P.C.

## ATTORNEY AT LAW

Former Judge, 272nd District Court

Former Judge, Brazos County Court at Law No. 2

Post Office Box 1206
Bryan, Texas 77806-1206

Telephone (979) 779-4357
Telefax (888) 435-4080
E-mail: RDavis@AttorneyRickDavis.com

504 E. 27th Street.
Bryan, Texas 77803

October 25, 2013

***VIA CERTIFIED MAIL: 7012 1640 0001 5253 1240***
Dorian E. Ramirez
Clerk of the Thirteenth Court of Appeals
Nueces County Courthouse
901 Leopard, 10th Floor
Corpus Christi, Texas 78401

RE:    Court of Appeals Number:    13-13-0080-CR
       Trial Court Case Number:    12-01541-CRF-85

STYLE:    *Jesse Tirado Lopez v. The State of Texas*

Dear Mr. Ramirez,

Enclosed please find for filing in the above-entitled and numbered matter the *original Appellant's Brief* along with five copies. By copy of this letter, both Counsel for Appellee and the Appellant are being advised of this filing and provided with a copy of same.

Please return the file/received stamped copy of the Letter in the enclosed self addressed stamped envelope. Thank you for your courtesy and assistance in this matter.

Sincerely,

Rick Davis

RD/res
Enclosures

**RECEIVED**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

OCT 28 2013

DORIAN E. RAMIREZ, CLERK
BY_____

**RECEIVED**

OCT 28 2013

13th COURT OF APPEALS

cc:
**VIA HAND DELIVERY**
Doug Howell III
Assistant District Attorney
Brazos County, TX

**VIA REGULAR MAIL**
Jesse Tirado Lopez, #01826705
Larry Gist State Jail
3295 FM 3514
Beaumont, TX 77705

**RITY**®

**ERVICE**

iov




PRIORITY MAIL
POSTAGE REQUI
U.S. POSTAGE
PAID
BRYAN, TX
77801
OCT 25. 13
AMOUNT

**$14.55**
00063232-04

1004    78401



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7012 1640 0001 5253 1240

From: /Exméditeur



**PRIORITY**® **MAIL**
UNITED STATES POSTAL SERVICE

For Domestic
and International Use



From    Rick Davis, Attorney at Law
        P.O. Box 1206
        Bryan, Texas 77806

**TO**     Dorian E. Ramirez
        Clerk, 13th Court of Appeals
        Nueces County Courthouse
        901 Leopard, 10th Floor
        Corpus Christi, TX 78401

Label 228, January 2008

Country of Destination: /Pays de destination:



PS00(

ACCEPTED
13-13-00080-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/24/2014 3:30:40 PM
DORIAN RAMIREZ
CLERK

CASE NO. 13-13-00080-CR

IN THE COURT OF APPEALS
THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/24/2014 3:30:40 PM
DORIAN E. RAMIREZ
Clerk

_____

JESSE TIRADO LOPEZ

VS.

THE STATE OF TEXAS

_____

ON APPEAL FROM THE 85TH JUDICIAL DISTRICT COURT
BRAZOS COUNTY, TEXAS
NO. 12-01541-CRF-85

_____

STATE'S BRIEF

_____

JARVIS PARSONS
DISTRICT ATTORNEY
BRAZOS COUNTY, TEXAS

Jessica Escue
Assistant District Attorney
300 E. 26th Street, Suite 310
Bryan, Texas 77803
(979) 361-4320
(979) 361-4368 (Facsimile)
State Bar No. 24059726
jescue@brazoscountytx.gov

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                    Jesse Tirado Lopez

Trial Counsel:                Thomas B. Reed
                              P.O. Box 9347
                              College Station, Texas 77842-9347

Appellate Counsel:            Rick Davis
                              504 E. 27th Street Ave
                              Bryan, Texas 77803

THE STATE OF TEXAS:           Jarvis Parsons
                              District Attorney

Trial Counsel:                John Brick and Jessica Escue
                              Assistant District Attorneys
                              300 E. 26th Street, Suite 310
                              Bryan, Texas 77803

Appellate Counsel:            Jessica Escue
                              Assistant District Attorney
                              300 E. 26th Street, Suite 310
                              Bryan, Texas 77803
                              jescue@brazoscountytx.gov

Trial Judge:                  Hon. Dan Beck (Visiting Judge)

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS .................................................................................... iii

INDEX OF AUTHORITIES ............................................................................ iv-v

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

STATEMENT OF THE CASE .............................................................................. 2

STATEMENT OF FACTS ..................................................................................... 3

SUMMARY OF THE ARGUMENT .................................................................... 22

STATE'S RESPONSE TO APPELLANT'S POINT OF ERROR ONE ................. 23

> Appellant has failed to demonstrate that his trial counsel provided
> ineffective assistance or that any such errors produced a harmful result from
> the jury.

STATE'S RESPONSE TO APPELLANT'S POINT OF ERROR TWO ............... 40

> Appellant failed to preserve his argument that Reed was not on the
> felony appointment list; Reed was appointed when the instant case
> was a misdemeanor offense, and any error was harmless.

PRAYER ............................................................................................................. 46

CERTIFICATE OF SERVICE ........................................................................... 47

CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4 ..................... 47

# INDEX OF AUTHORITIES

## CASES

*Bass v. State*, 713 S.W.2d 782 (Tex. App. -- Houston [14th Dist.] 1986) ........ 38-39

*Butler v. State*, 872 S.W.2d 227 (Tex. Crim. App. 1994)......................................41

*Charles v. State,* 146 S.W.3d 204 (Tex. Crim. App. 2004)....................................26

*Childs v. State,* No. 05-93-01612-CR, 1995 WL 44686  (Tex. App.--Dallas Feb. 2, 1995, no pet.) ...................................................................................... 41-42

*Craig v. State,* 825 S.W.2d 128 (Tex. Crim. App. 1992) .......................................33

*Duncan v. State*, 717 S.W.2d 345 (Tex. Crim. App. 1986).........................28, 32, 38

*King v. State*, 935 S.W.2d 266  (Tex. Crim. App. 1997)........................................44

*Little v. State*, 758 S.W.2d 551 (Tex. Crim. App. 1988). .......................................42

*United States v. Mullins*, 315 F.3d 449 (5th Cir. 2002)..........................................39

*Narvaiz v. State,* 840 S.W.2d 415 (Tex. Crim. App. 1992).........................24, 30, 38

*Ramos v. State,* 819 S.W.2d 939 (Tex. App.--Corpus Christi 1991, pet. ref'd).......... .................................................................................................... 41-42

*Rico v. State*, 707 S.W.2d 549 (Tex. Crim. App. 1986) .........................................27

*Starz v. State,* 309 S.W.3d 110 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).... ...................................................................................................................26

*Strickland v. Washington,* 466 U.S. 668 (1984) ............................................... 25-40

## STATUTES

Tex. Code Crim. Proc. art. 26.04 ................................................................... 42-44

## **RULES**

Tex. R. App. P. 21.8(a) .......................................................................................2

Tex. R. App. P. 33.1 .............................................................................30, 41

CASE NO. 13-13-00080-CR

IN THE COURT OF APPEALS
THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

_____

JESSE TIRADO LOPEZ

VS.

THE STATE OF TEXAS

_____

ON APPEAL FROM THE 85TH JUDICIAL DISTRICT COURT
BRAZOS COUNTY, TEXAS
NO. 12-01541-CRF-85

_____

STATE'S BRIEF

_____

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, the State of Texas, by and through its District Attorney, and files this brief in response to the points of error alleged by Appellant, and would respectfully show the Court the following:

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant requested oral argument. The State also requests oral argument only if granted to Appellant.

1

## STATEMENT OF THE CASE

Appellant, Jesse Lopez was charged by indictment with Assault Family Violence with a Previous Conviction. (CR 1). This charge was enhanced with Appellant's two prior prison trips to habitual offender status. (CR at 1). On November 29, 2012, the Thursday prior to trial, Appellant's appellate counsel, Rick Davis, filed a Conditional Motion to Substitute Counsel and a Motion for Continuance. (CR 17, 19). In these motions, Appellant sought to substitute Rick Davis for his trial counsel, Thomas Reed. (CR at 17; 2 RR 3-8). After a hearing, the trial court denied the Motion for Continuance. (2 RR 8). On December 4, 2012, Appellant pled not guilty to the offense, and a jury trial was held. (4 RR 1, 10). At the conclusion of the trial, the jury found Appellant guilty of Assault Family Violence with a Previous Conviction. (4 RR 119). After a subsequent punishment hearing, the trial court found the enhancement paragraphs true and sentenced Appellant to thirty-two years in the Institutional Division of the Texas Department of Criminal Justice. (5 RR 29).

On December 17, 2012, Appellant filed a Motion for New Trial alleging that he was denied effective assistance of counsel. (CR at 46). A hearing on Appellant's Motion for New Trial was held on February 1, 2013. (7 RR 1). Appellant's Motion for New Trial was overruled by operation of law on February 18, 2013. TEX. R. APP. P. 21.8(a).

2

Notice of Appeal was filed December 17, 2012. (CR 45).

## STATEMENT OF FACTS

*State's Evidence – Guilt/Innocence Phase*

**Officer Stacey Dowling** (Bryan Police Department) testified that, on February 15, 2012 at around 12:53 a.m., she responded to a noise complaint reported at the 700 block of North Washington in Bryan, Texas. (4 RR 13, 17-18). When she arrived on scene she saw a truck whose alarm was continuously going off. (4 RR 19-20). Dowling saw that there was an individual sitting in the passenger seat of the truck whose alarm was going off and approached the individual to speak with her about the alarm. (4 RR 20). When Dowling approached, she saw that the passenger was a female who was looking down and would not come out of the vehicle. (4 RR 20).

Dowling shined her flashlight towards the female in the passenger seat and saw that she was shaking and had dried blood on her lips, on her shirt, and inside her mouth. (4 RR 20-22). It appeared to Dowling that this female, later identified as Dora Mendez, had been punched in the mouth. (4 RR 25). Dowling started talking with Dora, who told Dowling that she and her boyfriend, Appellant, got into an argument at a bar in downtown Bryan because he was intoxicated and she did not want him to drive. (4 RR 22). During this argument, Appellant grabbed her glasses, bent them, and then punched her in the face with his right fist and then his

3

left fist. (4 RR 22). During the conversation, Dora was very emotional, fighting back tears and covering her face as if to hide it from law enforcement. (4 RR 25). Dora stated that Appellant was inside the house behind where the truck was parked. (4 RR 22).

Dowling knocked on the door to the house, but the residents denied that Appellant was there. (4 RR 23). Dowling called out an additional officer, and then searched the house for Appellant. (4 RR 23). Dowling found Appellant inside the bed of a truck parked in the backyard of the house, asleep. (4 RR 24). Dowling woke Appellant up and discovered that he was intoxicated. (4 RR 27). Appellant did not appear to have any injuries. (4 RR 27). At the end of her investigation, Dowling arrested Appellant for Assault—Family violence. (4 RR 27).

On cross-examination, Dowling conceded that Appellant mostly spoke with Officer Bravo, who spoke Spanish. (4 RR 29). Appellant told Dowling and Bravo that Dora punched him in the shoulder and that the broken glasses were his. (4 RR 40-41). Dowling also conceded that her conversations with Appellant and Dora were not recorded and she was recalling what Dora stated based on her report and her independent memory. (4 RR 33-34). Finally, Dowling stated that she identified Appellant as "Jesus" in her report because that is the name he gave her. (4 RR 29).

4

**Dora Mendez** (victim) testified that she and Appellant dated each other for approximately six years. (4 RR 44). During that time, Dora moved in with Appellant and was living with him. (4 RR 44). On February 14, 2012, Dora wanted to go out and do something for Valentine's Day. (4 RR 47). Dora and Appellant went to Groesbeck and then went to El Toro, a bar in downtown Bryan. (4 RR 48).

Once they arrived at El Toro, Appellant started drinking heavily and began fighting with Dora's daughter via text message. (4 RR 48). Dora contacted her daughter and asked her to stop texting Appellant. (4 RR 49). Dora stated that she and Appellant drank at El Toro for a couple of hours. (4 RR 50).

Around eight that night, a friend of Dora's, with whom Appellant did not get along, came up to Dora and gave her a hug in front of Appellant. (4 RR 50). Appellant became even more angry when he saw Dora's friend; he and Dora left the bar shortly thereafter. (4 RR 51). When they left El Toro, they decided to go to another bar and Dora asked Appellant if he wanted her to drive because of the amount of alcohol he had consumed. (4 RR 52). Appellant refused to let Dora drive. (4 RR 52).

At the second bar, Dora saw a few of her family members and went and spoke with them. (4 RR 53). Appellant became angry that Dora was not sitting next to him and paying attention to him so he told Dora that he did not want her

talking to anyone else at the bar. (4 RR 54). During this time, Dora and Appellant both continued to drink alcohol, with Appellant consuming more than Dora. (4 RR 54). Appellant refused to speak with Dora after she sat back down next to him. (4 RR 55).

Appellant finally told Dora it was time for them to leave and got up and walked out of the door. (4 RR 55). Once they were outside the bar, Appellant hit Dora in the face with a closed fist, breaking her glasses and causing her mouth to begin bleeding. (4 RR 55-57). Appellant then walked away from Dora to his nephew's house which was down the street. (4 RR 57-58).

Eventually, Appellant came back to the truck and drove the truck to his nephew's house. (4 RR 59). On the drive to his nephew's house, Appellant grabbed Dora by the hair and Dora responded by hitting him on the shoulder, pushing his head, and hitting him in the face. (4 RR 61). Appellant then got out of the truck and walked inside his nephew's house, leaving Dora in the vehicle. (4 RR 59-60). When Dora opened the door, the alarm to the truck started going off. (4 RR 63). Appellant shut the alarm off, but Dora continued to cause the alarm to go off because she was angry at Appellant for leaving her outside and assaulting her. (4 RR 63).

Soon after, the police arrived and Dora told the officers everything that had happened that night. (4 RR 64). Dora stated that she broke up with Appellant after this incident and has lived with her father since that time. (4 RR 66).

On cross-examination, Dora admitted that both she and Appellant were drinking that night. (4 RR 67). Dora reiterated on cross-examination that the only reason Appellant got angry was because she hugged her friend in front of him and spoke with her cousin at the second bar instead of sitting next to him. (4 RR 69). Dora also stated that, after they left the second bar, she asked Appellant if she could drive because she felt that he was too intoxicated, but he refused to speak with her. (4 RR 72). Instead, when they got into the car, Appellant grabbed her hair and started the second physical altercation. (4 RR 73). Finally, Dora conceded that Appellant broke both his arms in June of 2011, but stated that he did not have any bandages on his arm that night. (4 RR 75).

**Greg Silber**, an investigator with the Brazos County District Attorney's Office, testified that he had been a fingerprint examination expert for over ten years and had over five hundred hours of training in the area of fingerprint identification. (4 RR 82-84). Silber testified that he took Appellant's fingerprints and compared it to the fingerprints on the judgment in cause number 08-0667-CRM-CCL1 convicting Jesse Lopez for the misdemeanor offense of Assault—Family Violence. (4 RR 88-90). The fingerprints on the misdemeanor judgment

matched those of Appellant. (4 RR 90). Silber testified that, in his expert opinion, Appellant was the same Jesse Lopez that was convicted of assault family violence in cause number 08-0667-CRM-CCL1. (4 RR 90).

*State's Evidence – Punishment Phase*

**Greg Silber** was recalled by the State during the punishment phase of trial. He compared Appellant's fingerprints to that contained in State's Exhibits 15-33 (judgments) and opined that Appellant was the same Jesse Lopez that was convicted of the offenses listed in those exhibits. (4 RR 6-9). The judgments showed Appellant had the following convictions:

- A misdemeanor conviction for Driving While Intoxicated-2nd Offense on November 9, 1987.
- A misdemeanor conviction for Resisting Arrest on July 18, 1988.
- A misdemeanor conviction for Driving While License Suspended on May 18, 1992.
- A felony conviction for Driving While Intoxicated-3rd or more on April 15, 1992.
- A second felony conviction for Driving While Intoxicated 3rd or more on October 15, 1994.
- A misdemeanor conviction for Criminal Trespass—Property on September 1, 2000.
- A third felony conviction for Driving While Intoxicated-3rd or more on November 19, 2004.
- A misdemeanor conviction for Fleeing a Police Officer on January 24, 2007.
- A fourth felony conviction for Driving While Intoxicated 3rd or more on July 21, 2009.
- A second charge for Resisting Arrest which Appellant pled guilty to and was taken into consideration in punishment for his fourth felony conviction of Driving While Intoxicated 3rd or more.

(4 RR 10-12).

*Appellant's Punishment Evidence*

**Appellant** testified that he had six children that were ages 13, 15, 16, 17, 32, and 35 and that he had always provided for them and had good relationships with them. (5 RR 14). Appellant stated that, in the past, he had always pled guilty to the offenses he was charged with and that this was the first case he had taken to a jury trial. (5 RR 15). Appellant testified that he had a drinking problem that he had a hard time controlling. (5 RR 16). Appellant stated that he had tried to give up alcohol in the past, but every time he tried he always ended up drinking again. (5 RR 16). Appellant stated that if he was given a sentence which would allow him to get out of jail, he felt that he could be a law-abiding citizen, especially for the sake of his children. (5 RR 16).

Appellant admitted on cross-examination that when he drinks he tends to assault people and cannot control his behavior. (5 RR 17). Appellant also admitted that, in addition to the judgments entered in the State's case, he also has a conviction for Public Intoxication out of Tom Green County and two other convictions for Driving While Intoxicated out of Robertson County. (5 RR 19). Appellant also stated he did not disagree with the jury's verdict in the case. (5 RR 19).

Appellant claimed that the argument in the truck started because Dora wanted to drive, but stated that Dora lied on several points during her testimony.

9

(5 RR 20-21). Appellant denied that he was passed out in a second truck in the back yard of his nephew's home, but claimed that he fell asleep waiting on the police to arrive. (5 RR 21). Finally, Appellant admitted that he was on parole at the time for Driving While Intoxicated and that it was a condition of parole that he was not to consume alcohol. (5 RR 23).

*Appellant's Evidence — Motion for New Trial hearing*

**Magistrate Judge Dana Zachary** testified that part of her duties as a Brazos County magistrate judge is to appoint attorneys to handle misdemeanor cases for indigent defendants. (7 RR 23). Also part of her duties is to retain the records of attorneys that request to be on the court appointment list for indigent defendants. (7 RR 23). In order for an attorney to be placed on the court-appointed felony list, one of the three district judges must approve or deny the attorney. (7 RR 25). In addition to the general felony list, there is also a list for felony offenses listed under Tex. Code Crim. Proc. art. 42.12 § 3G and a list for felony appellate work. (7 RR 26).

Thomas Reed was not on the felony appointment list at the time he was appointed in the instant case. (7 RR 28). However, if the offense originally came in as a misdemeanor charge, it was possible that Mr. Reed could have been appointed to the case. (7 RR 28). Over ten years prior to the motion for new trial hearing, Reed requested to be put on both the misdemeanor and felony

10

appointment list. (7 RR 30). Reed was not approved to be on the felony appointment list but was approved to be on the misdemeanor appointment list. (7 RR 31). Reed later applied to be on the felony appointment list and was again denied. (7 RR 31). Zachary stated that appointed counsel are supposed to inform their clients within seventy-two hours of their appointment. (7 RR 34).

**Sarah Portillo**, the mother of Appellant's children, testified that she tried to contact Thomas Reed four or five times prior to trial and that he never returned her call. (7 RR 39). Portillo stated that if she had been called as a witness at trial, she would have testified that Appellant is a good father who helps financially with the children. (7 RR 39). Portillo also could have testified that, before the instant offense, Appellant broke his middle finger on his right hand. (7 RR 45). Although she conceded that Appellant received proper medical attention for his hands, Portillo testified Appellant could not grip objects well and would have trouble punching someone. (7 RR 47).

Portillo stated that the day before trial, Reed contacted her to try and get clothes brought up for Appellant. (7 RR 39). During that conversation, Portillo asked what was going to happen in the case, and Reed responded that he did not know yet. (7 RR 40). Portillo then asked if it would be okay for her to come up to court, and Reed replied that it was not necessary at this time. (7 RR 40). Portillo admitted she was not sure of the dates she attempted to call Reed. (7 RR 44).

11

**Dora Mendez** testified that, prior to trial, she attempted to contact Thomas Reed several times about Appellant's defense, and he never called her back. (7 RR 50).

**Rick Davis** (appellate counsel for Appellant) testified that he was originally contacted by Appellant to see if he could represent him at the trial phase of this case. (7 RR 58). Ultimately, Appellant hired Davis on October 26, 2012. Upon being hired, Davis faxed a copy of the Motion to Substitute Counsel to Thomas Reed. (7 RR 58). Reed faxed back the signed motion on November 20, 2012, but Davis was on vacation that week. (7 RR 59). Davis ultimately received the signed motion on November 27, 2012 – six days before Appellant was scheduled for trial. (7 RR 59). Davis filed a Conditional Motion to Substitute into Appellant's case, which was conditioned on him not having to try Appellant's case on December 3, 2012. (7 RR 59).

On cross-examination, Davis admitted that, in his practice, he has not spent the amount of time each client wants him to on every single case. (7 RR 61). Davis also admitted that his office has not returned every single call to every single client. (7 RR 62). Finally, Davis admitted that the District Attorney's Office sent him notice on November 12, 2012 that Mr. Lopez's trial was scheduled for December 3, 2012. (7 RR 66).

**Sgt. Anna Sifuentes,** the custodian of records with the Brazos County Jail introduced the visitor jail log of the Brazos County Jail for the length of time that Appellant had been incarcerated. (7 RR 70-72). Sgt. Sifuentes testified it is possible for attorneys to come visit their clients and not sign in on the visitor log if they talk to them via closed circuit video. (7 RR 73).

**Thomas Reed** (Appellant's trial counsel) testified that he was a solo practitioner attorney that practiced family law, criminal defense, and general practice work. (7 RR 76). Reed's primary work was in the area of criminal defense. (7 RR 76). Reed graduated from St. Mary's University Law School in 1998 and was admitted to the bar in November of 1998. (7 RR 108). Reed stated he had tried approximately thirty misdemeanor jury trials, with at least six in the prior year. He had also tried four felony jury trials. (7 RR 108, 110). Two of his felony jury trials were enhanced felonies. (7 RR 110). Reed had handled numerous Assault—Family Violence cases in his career. (7 RR 109).

Reed was initially appointed on Appellant's case when Appellant was arrested on the underlying misdemeanor case in the instant offense. (7 RR 76). This case was later enhanced to a habitual felony offense based on Appellant's prior criminal convictions. (7 RR 78). Reed stated that he was not on the felony appointment list at the time of his appointment to Appellant's case, but stated that he has accepted felony appointments in Brazos County in the past and has been

13

appointed at least on one occasion to an enhanced felony case. (7 RR 78). Reed also had represented clients on a number of occasions where he was originally appointed on a misdemeanor charge they had pending and, during the representation, the client picked up a felony offense. (7 RR 158). When this occurred, the client often requested that the trial court allow Mr. Reed to represent them in the felony case as well. (7 RR 158). With the client's consent, the trial court would allow Reed to be appointed on the felony case as well. (7 RR 158).

Reed believed he informed Appellant at the first court appearance that he was not on the felony appointment list. (7 RR 93). A recording of this first court appearance was entered into evidence. (7 RR 131). In this recording, the magistrate judge informed Appellant of his assault charge and discussed Appellant's options with him. (8 RR State's Exhibit A). During the hearing, Appellant indicated that his name was not correct on the indictment, his social security number was incorrect in the paperwork, and asked questions that the judge could not legally answer about his charges. (8 RR State's Exhibit A). Appellant was also informed on the record that Reed was not on the felony appointment list and the magistrate judge specifically asked Appellant if he wanted new counsel or

14

wished to keep Mr. Reed. (8 RR State's Exhibit A). Appellant stated on the record that he wished to keep Mr. Reed. (7 RR 138; 8 RR State's Exhibit A). [1]

During the time he represented Appellant, Reed met with him on April 24, 2012; May 16, 2012; May 23, 2012; June 27, 2012; August 1, 2012; and November 30, 2012. (7 RR 91-93, 98-99, 101). Appellant could speak broken English, and Reed could communicate with him. However, in order to communicate effectively and make sure that Appellant understood everything, Reed used a translator in his communications. (7 RR 119, 139). Still, Appellant wrote Reed three different letters in English requesting to meet with him. (7 RR 159). Since a translator was not available at the jail, Reed used the court hearings where an interpreter was available to meet with Appellant. (7 RR 119).

During these meetings, Reed would talk at length with Appellant about the facts of the case and the evidence against him. (7 RR 112). In addition, Reed also discussed Appellant's version of events as well as Appellant's concerns that the indictment in the case did not list his correct name, that Dora did not want to prosecute the case, and that Appellant did not believe he committed the Driving

---

[1] Appellant constructed an uncertified transcript and attached this as Appendix A to his brief. (Appellant's brief, p. 40). However, the State disagrees that Appellant's answer to the question of whether or not he wished Mr. Reed to remain on this case is inaudible. In the recording, you can clearly hear Appellant state, "That's fine". (8 RR State's Exhibit A). The trial court reporter transcribed the conversation in the reporter's record and also recorded his answer as "That's Fine." (7 RR 138). This answer is also clearly backed up by the magistrate's entry in the docket sheet from that date which states, "Needs an interpreter – Reset arraignment. He understands English—But it needs to be read to him in Spanish – He wants Thomas Reed to stay on the case." (CR 50).

15

While Intoxicated offense that was used to enhance the punishment range. (7 RR 112-13). Reed also discussed with Appellant the fact that this was a Class A misdemeanor offense which was enhanced with his prior convictions all the way to a habitual offender status. (7 RR 115). Reed explained to Appellant that this meant his punishment range was twenty-five years to life in prison. (7 RR 115). Appellant seemed confused at first that he was charged with assault and explained to Reed that he assaulted Dora when she fought him for control of the wheel as they were driving. (7 RR 116).

Reed brought Appellant's concerns up to the prosecution and confirmed that Appellant was in fact the same individual who committed the two offenses used to enhance him. (7 RR 113). Reed also conferred with parole to find out the consequences to Appellant's parole if he received a conviction in the instant case. (7 RR 114). Reed received from the State the photographs in the case, the probable cause statement, and the police reports. (7 RR 111). On August 1, 2012, the State made an offer of twenty years prison and to waive one of the enhancement paragraphs, and Reed discussed this plea offer with Appellant. (7 RR 100).

Reed's strategy going forward at trial was to undermine the investigation that the officers did and to point out that the witness statement in the case was only one sentence. (7 RR 116). Reed felt that the investigation was not properly done as there were no audio statements made by police, and Dora's witness statement

16

consisted of one sentence. (7 RR 117). Reed also hoped to show the jury that Appellant's actions were prompted by Dora's behavior in the vehicle and to show the jury that Appellant was simply trying to maintain control of the car that night. (7 RR 116-17).

Appellant informed Reed that he broke his hands several months prior to the assault incident with Dora. (7 RR 146). Reed asked about his injuries, but Appellant indicated that they did not have any relation to the incident and Reed stated that it did not appear that he was still suffering from the injury. (7 RR 146, 164).

Reed confirmed that he received the Motion to Substitute Counsel on October 26, 2012, but was unable to send it back to Davis because his fax machine needed to be repaired. (7 RR 77). When it was repaired, he sent the signed motion back to him. (7 RR 77). However, Reed testified that there was no requirement that he sign off on the Motion to Substitute before Davis could file it with the trial court and was surprised that Davis did not do so. (7 RR 149-50).

Prior to trial, Reed spoke with Appellant about possible witnesses he could call in his defense. (7 RR 102). Appellant mentioned Sara Portillo, the mother of his children, his sister— Carolina Arriola, and Dora Mendez— the victim of the offense. (7 RR 101). Portillo tried to call Reed on one prior occasion, but no other family members or friends ever tried to make contact with Reed other than the

victim, Dora Mendez. (7 RR 101). When Portillo tried to contact him, Reed tried to return her call, but was initially unable to get in touch with her. (7 RR 102). Reed specifically checked his phone records and denied that Portillo ever tried to contact him more than once. (7 RR 105).

Reed stated that right before trial began, he talked with Portillo twice about what was going on in the case and also called to request Portillo bring clothes for Appellant to wear at trial. (7 RR 106). Reed gave specific instructions to Portillo about how to get Appellant street clothes to him prior to trial. (7 RR 124). However, Portillo did not follow through and did not bring Appellant clothes. (7 RR 125). When he called Portillo about the missing clothes the morning of trial, Portillo indicated that she did not have a way to get clothes for him, but she would contact Arriola about it. (7 RR 125). Reed made clear that Portillo could call him back with any questions about the trial or if they had problems with the clothes. (7 RR 126). Neither Arriola nor Portillo ever appeared at the courthouse with clothes or called him back about the trial or the clothes. (7 RR 126).

Reed could not remember if (1) he tried to return Dora's call and was unable to get in touch with her or if (2) he did not try and contact her because of concerns about a witness tampering accusation. (7 RR 102-04). Reed attempted to contact Carolina Arriola at a number Appellant gave him and left a voicemail, but she did not call him back. (7 RR 123).

18

Reed tried the instant case on December 3-5th of 2012. (7 RR 76). During trial, Reed asked Appellant if he wished for him to again try and contact his sister or Portillo to come and testify on his behalf. (7 RR 107). Appellant stated that he did not wish to call either of those witnesses to testify either in the guilt/innocence phase or during the punishment phase. (7 RR 107, 127). Reed explained that neither Arriola nor Portillo had any actual knowledge of the event and anything else they said would not be admissible at least during the guilt/innocence phase. (7 RR 126). However, Reed also asked Appellant whether he would like to have Portillo or any other members of his family testify during the punishment phase of trial and Appellant stated that he did not. (7 RR 127).

Reed considered calling Appellant as a witness in the guilt/innocence phase of trial, but stated that Appellant's extensive criminal history along with the fact that he was on parole would likely come into evidence if Appellant testified. (7 RR 128). Furthermore, because Appellant did not speak English and some of the translators Reed used to communicate with Appellant expressed concern and confusion about Appellant's side of the story, Reed was concerned that Appellant would not be able to effectively communicate with the jury. (7 RR 129). After explaining the pros and cons of testifying to Appellant, Appellant decided not to testify in the guilt/innocence phase of trial. (7 RR 129, 144). During the punishment phase, Appellant still did not want to testify, but Reed explained that

19

this was his only opportunity to present anything on his side since he did not want any other witnesses to testify on his behalf. (7 RR 130). As a result, Appellant was the only witness during the punishment phase of trial. (7 RR 130).

Reed conceded that he did not go to the bar that Appellant visited the night of the offense or visit the back yard of the home where he was arrested. (7 RR 83). Reed also admitted that he did not visit Appellant in jail while he was incarcerated. (7 RR 89). However, Reed visited Appellant on numerous occasions both before and after court appearances throughout his case. (7 RR 90).

**Appellant** testified that he heard the recording of his first court appearance after indictment that was played as part of State's Exhibit A and confirmed that English is not his first language. (7 RR 172). Appellant stated that, at his first court appearance after indictment, he did not understand what the magistrate was talking about when she asked if he wanted Reed to remain on his case. (7 RR 173). Appellant denied writing the three letters which were sent to Reed, instead stating that he had someone else write the letters for him. (7 RR 174).

Appellant stated that Reed never communicated the State's offer of twenty years in prison on the assault case to him. Instead, Reed told him that if he wanted to plead guilty to Driving While Intoxicated he could get a plea deal of twenty years in prison. (7 RR 177). Appellant stated that Reed was confused and thought

20

that Appellant was charged with Driving While Intoxicated during the case. (7 RR 177).

Appellant stated that, around eight months prior to the offense, he broke his hands falling off a ladder and had to be put into casts. (7 RR 178). When he broke his hands, the doctor told him he needed surgery to correct the break, but Appellant did not have the money. (7 RR 178). When Appellant would drive, he would use his forearms because of the break in his hands. (7 RR 179).

Appellant stated that Reed never informed him that he could have Portillo or his children come and testify on his behalf during the punishment phase of trial. (7 RR 181). Appellant was also never informed that he could call Dora and ask her to come and ask for leniency on his behalf. (7 RR 182).

On cross-examination, Appellant agreed that, during his direct-examination testimony in the Motion for New Trial hearing, he was sometimes answering the defense attorney's questions in English prior to the translator translating the questions into Spanish. (7 RR 183). Appellant also conceded he was mostly upset with Reed because he did not call Appellant's family and report back to Appellant on how they were doing. (7 RR 187). Appellant also conceded that he told Reed not to call his children to testify on his behalf but at trial, but insisted that he told Reed that he could call his sister Carolina or Portillo as witnesses. (7 RR 188).

Appellant vehemently denied that he had been having conversations with the bailiff in English throughout his trial. (7 RR 190).

*State's Evidence –Motion for New Trial hearing*

**John Brick** (State's trial counsel) stated that for months prior to trial, Reed repeatedly told him that Davis was supposed to substitute in the case but had failed to do so. (7 RR 200). During the course of this case, Brick had several communications with Reed about the facts of the case; in the month of November before the December trial date, he also gave Reed all the discovery in the case as well as Tex. R. Evid. 404(b) notice. (7 RR 201).

## SUMMARY OF THE STATE'S ARGUMENT

Appellant claims in his first point of error that the trial court erred in denying Appellant's Motion for New Trial as he did not "receive effective assistance of counsel [as] guaranteed by the Sixth Amendment of the United States Constitution." (Appellant's Brief, p. 14). Appellant lists twenty instances in which he claims his trial counsel was ineffective. (Appellant's brief, p. 14-16). However, under each sub-point Appellant fails to demonstrate how Mr. Reed's alleged failures constituted deficient performance under the first prong of *Strickland v. Washington,* 466 U.S. 668 (1984). Additionally, Appellant fails to demonstrate in any way how these alleged failures are "sufficient to undermine confidence in the

outcome" of either the trial or the punishment hearing. *Id.* at 694. As a result, Appellant's first point of error is without merit and should be denied.

Appellant claims in his second point of error that his statutory rights under the Texas Fair Defense Act codified under Tex. Code Crim. Proc. art. 26.04 were violated when an attorney who was not on the court appointment list for felonies was allowed to represent him. (Appellant's brief, p. 24). However, Appellant failed to properly preserve this point of error as he did not object at any time during the proceedings. Furthermore, Reed was appointed when the instant offense was a Class A misdemeanor and before it was enhanced to a habitual felon punishment range due to Appellant's prior convictions. Consequently, the trial court did not err in allowing Reed to remain on the case with Appellant's consent as Tex. Code Crim. Proc. art. 26.04(a) does not require an attorney on an underlying misdemeanor to withdraw if the case is enhanced to a felony offense. Finally, even if the trial court erred in appointing Thomas Reed, any error was harmless as it did not deny Appellant of a substantial right.

### STATE'S RESPONSE TO APPELLANT'S POINT OF ERROR ONE

**Appellant has failed to demonstrate that his trial counsel provided ineffective assistance or that any such errors produced a harmful result from the jury.**

Appellant claims in his first point of error that the trial court erred in denying Appellant's Motion for New Trial as he did not "receive effective

23

assistance of counsel [as] guaranteed by the Sixth Amendment of the United States Constitution." (Appellant's Brief, p. 14). Appellant lists twenty instances in which he claims his trial counsel was ineffective:[2]

1. Mr. Reed was not approved and qualified to be appointed on felony cases in Brazos County.
2. Not only was Mr. Reed not approved to be appointed to handle "3G" or Enhanced felonies, he was not even approved and qualified to handle State Jail Felonies. In fact, his request to be approved to handle any caliber of felony case was denied twice denied by the three District Judges of Brazos County, Texas.
3. Mr. Reed failed to visit his client, Jesse Lopez, in jail despite his several requests to do so from the Appellant, the Appellant's girlfriend and even the alleged victim.
4. Mr. Reed failed to respond to phone calls placed by Jesse Lopez from jail.
5. Mr. Reed failed to respond to letters sent to him by Jesse Lopez from jail.
6. Mr. Reed acknowledged at the hearing on the Motion for New Trial that he sent no letter to the Magistrate that appointed him confirming that he contacted Jesse Lopez, although such was required by the Brazos County Indigent Defense Plan.
7. Mr. Reed failed to return several phone calls placed by Sarah Portillo, Mr. Lopez's girlfriend when she called on his behalf.
8. Mr. Reed only spoke to his client at four, possibly five, brief court hearings and at the jury trial; never outside of court.
9. Mr. Reed acknowledged that the only work he did on the case occurred in the courtroom.
10. Mr. Reed neglected to inform Ms. Portillo that she could have testified as a witness on behalf of Mr. Lopez during the punishment phase of trial.

---

[2] Appellant's argument contains no citations to the record. (Appellant's brief, p. 14-16). Thus it is inadequately briefed and the State argues Appellant's argument is waived for noncompliance with Tex. R. App. Proc. 38(i). *See Narvaiz v. State,* 840 S.W.2d 415, 428-29 (Tex. Crim. App. 1992) (defendant's failure to cite any place in the record where his argument was made and ruled upon by the trial court waived the error for appellate review).

11. In fact, Mr. Reed actually discouraged Ms. Portillo and their children from coming to the trial despite the fact that she could have and would have testified that Mr. Lopez was a good father and a good man.
12. Mr. Reed admitted that the only time he contacted Ms. Portillo was to get clothes for the Mr. Lopez [sic] to wear during trial.
13. Mr. Reed failed to ever speak with Dora Mendez, the alleged victim in the case, despite her numerous attempts to contact Mr. Reed on Mr. Lopez's behalf before trial.
14. Mr. Reed admitted that the only time he ever spoke with Dora Mendez was during cross[-]examination at trial.
15. Mr. Reed never visited the scene where the offense that was the subject of Mr. Lopez's trial supposedly occurred.
16. Mr. Reed never visited the scene where Appellant was arrested.
17. Mr. Reed failed to call any witnesses in Appellant's defense at trial.
18. In fact, Mr. Reed failed to put on *any* evidence in Appellant's defense at trial
19. Mr. Reed failed to prove to the jury that Appellant's hands were deformed from a prior injury to the point that he could not possibly have hit the victim without causing further injury to himself.
20. Mr. Reed failed to properly communicate to Appellant the State's plea offer and what charge the State was offering to allow him to plead to.

(Appellant's brief, p. 14-16).

However, under each sub-point Appellant fails to demonstrate how Mr. Reed's alleged failures constituted deficient performance under the first prong of *Strickland v. Washington,* 466 U.S. 668 (1984). Additionally, Appellant fails to demonstrate in any way how these alleged failures are "sufficient to undermine confidence in the outcome" of either the trial or the punishment hearing. *Id.* at 694.

## Standard of Review

A trial court's ruling on a Motion for New Trial is reviewed under an abuse of discretion standard. *Starz v. State,* 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Therefore, ineffective assistance of counsel issues which are raised in a Motion for New Trial are also reviewed under an abuse of discretion standard. *Id.* (holding the trial court's application of the *Strickland* test in a Motion for New Trial is reviewed under an abuse of discretion standard); *Charles v. State,* 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (holding appropriate standard of review claim for ineffective assistance claim brought forth in a Motion for New Trial is abuse of discretion). Consequently, a court of appeals may only reverse the trial court's determination of ineffective assistance if the trial court's decision "is arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling." *Starz,* 309 S.W.3d at 118; *Charles,* 146 S.W.3d at 208.

## Applicable Law

The Supreme Court established a two part test for the analysis of claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The Court stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must

26

show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687.

In applying the two-prong test the Supreme Court noted:

...a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed....

*Id.* at 697.

The fact that a defendant was not accorded "reasonably effective" assistance of counsel does not warrant setting aside the conviction if the error had no effect on the proceedings. *Rico v. State*, 707 S.W.2d 549, 556 (Tex. Crim. App. 1986). It is the defendant's burden to prove prejudice—that is, that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. *Id.* In making this showing, the defendant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. 698.

### *Attorney Reed's Appointment*

Appellant claims in his first and second sub-grounds that Reed's performance was deficient because he was not approved to be on the felony

appointment list. (Appellant's brief, p. 14). However, Appellant was aware of this fact and told the trial court that he wanted Reed to remain on his case:

> JUDGE [GORE][3]:  Okay. Mr. Reed is not on the felony appointment list, so he will remain your attorney by your consent. Do you wish to have Mr. Reed stay on the case?
>
> THE DEFENDANT:  That's fine. That's fine. That's fine.

(7 RR 138).

Consequently, because Appellant knew that Mr. Reed was not on the felony appointment list and chose for Mr. Reed to stay on the case, he cannot complain now on appeal that Mr. Reed was not on the felony appointment list. *See Duncan v. State*, 717 S.W.2d 345, 347 (Tex. Crim. App. 1986) (*holding* that if a defendant insists that a particular trial strategy be followed, he may not later complain that such a strategy constituted ineffective assistance). Furthermore, Appellant fails to demonstrate in any way or how Mr. Reed's failure to be on the felony appointment list constituted deficient performance under the first prong of *Strickland* or any harm under the second prong of *Strickland*. *Strickland,* 466 U.S. at 687; 690.

### *Jail Communication*

Appellant claims in his third and fifth sub-grounds that "Mr. Reed failed to visit …[Appellant] in jail.." and "failed to respond to letters [from Appellant] from

---

[3]   The Reporter's Record incorrectly states that the magistrate judge conducting arraignment was Judge Dana Zachary when it was actually Associate Judge Glynnis Gore who conducted arraignment.

28

jail." (Appellant's brief, p. 15). However, in the Motion for New Trial, Reed explained that in order to effectively communicate with Appellant, he needed to have a translator present and no translator was available at the jail. (7 RR 119, 139). Reed further explained at the time he received the letters, it would be quicker to wait for the next court hearing than to hire an interpreter to go out with him to the jail:

> Q. [Mr. Davis]    So the reason you never went out to jail to see Mr. Lopez was because you don't speak Spanish?
>
> A. [Mr. Reed]    That was one of the difficulties in visiting [in] the jail without having a translator. If I didn't have a translator, it was going to make it more difficult to speak with him. The other thing was whether there was information that I specifically needed or needed to get from him. So there were times when I was – he had written me when he was able to visit with him in court quicker than to be able to in time it would take to go visit in jail.

(7 RR 143-44).

Appellant's pretrial and status hearings were frequently held in the months between his indictment and his trial, occurring five different times in eight months. (7 RR 91-93, 98-99, 101). These hearings had translators and a significant time for Appellant to meet with Reed. (7 RR 112-19). Consequently, Appellant cannot demonstrate any deficiency under the first prong of *Strickland* or any harm under the second prong of *Strickland* in Reed's decision not to meet with his client in the jail or communicate with him via letters. *Strickland,* 466 U.S. at 687; 690.

29

*Appellant's Phone Calls*

Appellant states in his fourth sub- ground that "Mr. Reed failed to respond to phone calls placed by Jesse Lopez from jail." (Appellant's brief, p. 15). However, this sub-ground contains no citations to the record. As a result, this sub-issue is inadequately briefed and should be denied. *Narvaiz v. State,* 840 S.W.2d 415, 428-29 (Tex. Crim. App. 1992) (defendant's failure to cite any place in the record where his argument was made and ruled upon by the trial court waived the error for appellate review). Moreover, the record does not reveal that this issue was ever raised or discussed in the Motion for New Trial. Thus it is deemed waived. TEX. R. APP. P. 33.1

*Notice to Magistrate*

In Appellant's sixth sub-ground, Appellant states that Reed failed to send a letter to Judge Dana Zachary confirming that he had contacted Jesse Lopez within seventy-two hours as required. (Appellant's brief, p. 15). However, Appellant fails to state how the failure to send Judge Zachary the required notice constituted deficient performance in Appellant's case or how the failure to send the notice to Judge Zachary prejudiced the outcome of the case. Consequently, Appellant has failed to demonstrate how his counsel was ineffective under the either prong of *Strickland. Strickland,* 466 U.S. at 687, 691-94.

*Communication with Portillo*

Appellant claims in his seventh, tenth, eleventh, and twelfth sub-points that Reed's performance was deficient in the method and frequency of his communication with the mother of Appellant's children, Sarah Portillo. (Appellant's brief, p. 15-16). Specifically, Appellant claims that Reed failed to return phone calls to Portillo, failed to inform Portillo that she could testify as a witness in the punishment phase of trial, discouraged Portillo from coming to trial, and only contacted Portillo to get clothes for Appellant to wear at trial. (Appellant's brief, p. 15-16).

However, during the Motion for New Trial, Reed stated that his phone records indicated that Portillo only contacted him on one occasion and that he attempted to get back in touch with her but could not. (7 RR 101). Furthermore, Reed also stated that, immediately prior to trial, he contacted her multiple times to inform her about what was going on with trial and to ask that she procure clothes for Appellant to wear at trial. (7 RR 106, 124). Portillo never procured clothes despite multiple phone requests. (7 RR 106, 124-25).

Reed also testified that it was Appellant's specific request not to call Portillo as a witness at trial and in fact informed the trial court of that specific request:

Q. [Ms. Escue]   And Mr. Davis mentioned about the fact that you never called either Carolina or Sara as witnesses in this case. Can you tell us about the decision not to call them as witness[es] in the case?

31

A. [Mr. Reed]    At least from the guilt/innocence stage of the trial, neither – well, at least when speaking with Ms. Portillo, she did[n't] indicate she had any actual knowledge of the event.

Q.    Did Mr. Lopez indicate to you either one of them had actual knowledge of the event?

A.    No, he didn't.

Q.    Keep going.

A.    So at least as far as that stage of the trial, there was nothing they could really testify about that would be admissible as far as knowledge about the specific event that happened.

Q.    And during the punishment phase of the trial, did Mr. Lopez indicate to you that he did not want any family member called?

A.    Yes, he did.  I did ask him if he wanted me to call his sister or mother of his children or any other family members.  He indicated he didn't want me to call them.

Q.    In fact, did he tell the Court he did not want you to call any family members during the punishment phase of the trial?

A.    That is my recollection.

(7 RR 126-27).

Consequently, since Appellant specifically requested that Portillo not be used as a witness in the instant case and the record reveals that Reed attempted to contact Portillo multiple times prior to trial, Appellant has failed to demonstrate any deficiency under the first prong of *Strickland. Strickland*, 466 U.S. at 687; *Duncan v. State*, 717 S.W.2d 345, 347 (Tex. Crim. App. 1986) (*holding* that if a

defendant insists that a particular trial strategy be followed, he may not later complain that such a strategy constituted ineffective assistance).

Furthermore, even if this Court finds that Appellant's trial counsel fell below an objective standard of reasonableness, Appellant must still demonstrate under the second prong of *Strickland* that "but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland,* 466 U.S. at 694; *Craig v. State,* 825 S.W.2d 128, 129 (Tex. Crim. App. 1992). This probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If Appellant fails to demonstrate that the decision reached by the jury would have been different but for the errors of his trial counsel, the trial court's decision is affirmed despite the error. *Id.*

Portillo's potential testimony that Appellant was a good father who helps the family financially was already testified to by Appellant during the punishment phase of trial. (5 RR 14). In contrast, the State presented evidence during the punishment phase that this was Appellant's **fifth** felony conviction and twenty-third criminal charge related to his alcohol abuse. (4 RR 10-12, 19). Appellant only received thirty-two years out of a possible punishment range of twenty-five years to life in prison. (5 RR 29). Consequently, Appellant has failed to demonstrate any harm to Appellant under the second prong of *Strickland. Strickland,* 466 U.S. at 694.

*Preparation for Case*

Appellant claims in his eighth and ninth sub-grounds that "Mr. Reed acknowledged that the only work he did on the case occurred in the courtroom" and "Mr. Reed only spoke to his client at four, possibly five brief court hearings and at the jury trial; never outside of court." (Appellant's brief, p. 15). However the record demonstrates that Reed did a significant amount of work both inside and outside the courtroom including:

- Meeting with Appellant and a translator to help with communication on numerous occasions both before and after court appearances. (7 RR 91-93, 98-99, 101).
- Researching whether Appellant's cases were properly enhanced with the correct individual. (7 RR 113).
- Communicating with parole about the effect of a conviction on Appellant's parole status. (7 RR 114).
- Receiving discovery from the State and communicating with Appellant about the evidence contained therein. (7 RR 114).
- Obtaining a plea offer from the State and communicating with Appellant about it. (7 RR 100).
- Communicating with Appellant's family about the status of the case and attempting to get him clothes for the trial. (7 RR 106, 125).

An accurate review of the record demonstrates that Appellant's contention -- that the only work Reed did in the instant case only occurred in the courtroom during a few brief court hearings -- is not true. Furthermore, as previously discussed, Reed needed a Spanish interpreter when he communicated with Appellant in order to make sure Appellant completely understood what Reed was

telling him, and the best opportunity for this was before and after the court hearings where translators were provided. (7 RR 112-19, 139). Consequently, Appellant has failed to demonstrate how his counsel was ineffective under the first prong of *Strickland* through the location of his preparation work in the instant case or that the result of the proceeding would have been different under the second prong of *Strickland*. *Strickland,* 466 U.S. at 687, 691-94.

### *Communication with Mendez*

Appellant claims in his thirteenth and fourteenth sub-points that Reed was ineffective because he failed to communicate with the victim, Dora Mendez, prior to trial. (Appellant's brief, p. 16). However, Appellant fails to state at all how this failure harmed him in any way or how the result of the trial would have been different if Reed had spoken with Dora. As a result, Appellant has failed to demonstrate the required harm under the second prong of *Strickland*. *Strickland,* 466 U.S. at 694.

### *Scene Visit*

Appellant claims in his fifteenth and sixteenth sub-points of error that Reed's performance was deficient because he did not visit the crime scene or the scene of Appellant's arrest. (Appellant's brief, p. 16). Appellant does not point out any unknown information that visiting the scenes would have revealed or to any possible mitigating evidence which might have been found at either location.

Thus, Appellant fails to state how this failure harmed him in any way or how the result of the trial would have been different if Reed had visited the crime scene and the scene of the arrest. As a result, Appellant has failed to demonstrate the required harm under the second prong of *Strickland*. *Strickland,* 466 U.S. at 691-94.

*Defense Witnesses and Evidence*

Appellant claims in his seventeenth and eighteenth sub-points that Mr. Reed's performance was deficient because he failed to call any witnesses in Appellant's defense at trial and failed to put on any evidence in Appellant's defense at trial. (Appellant's brief, p. 16). However, Reed explained at length that the only witnesses to the offense were Appellant and Dora and calling Appellant was fraught with risks:

> Q. [Ms. Escue]    And the only witnesses in this case were Ms. Mendez and Mr. Lopez; is that correct?
>
> A. [Mr. Reed]    Yes.
>
> Q.    Did you have concerns with calling Mr. Lopez as a witness during the guilt/innocence phase of the trial?
>
> A.    Yes, I did.
>
> Q.    Can you explain that to the Court?
>
> A.    I certainly gave some consideration to the idea of calling him as a witness. In cases like these when it's one party saying one thing happened and another party saying something else happened, especially in assault cases and family violence cases that I have

36

noticed over the years, lots of times you are [dealing] with the problem of [the] statement given by the victim and sign[s] of injury and only one explanation. So I did have a concern about that.

My concern about calling Mr. Lopez as a witness is that he had an extensive criminal history that would end up coming in if he testified. He had [a] prior misdemeanor assault which, although the jury was made aware of something because the nature of the charge, that could have been brought into a lot more detail. He also had a number of DWIs that could have been brought in that would have caused a great deal of concern. The fact that he was on parole at the time for a driving-while-intoxicated case and there was testimony from Ms. Mendez that he was out drinking and was even driving at the time had some cause for concern because the jury could view that as him, you know, you know not only have[ing]…prior DWIs but he's violating his parole again. So those all causes of concern.

I did have some concern about how clearly he'd be able to communicate consistently his side of the story. I know in speaking with one of the translators she had concern[s] about some confusion over some of the things he was trying to say. So certainly if I had [a] concern about whether he was going to be able to clearly communicate his side of the story, that would also be a problem. If that – if he wasn't able to clearly do that, even if the jury got beyond all the past criminal history, that might hurt his credibility.

Q.    Did you explain these concerns to Mr. Lopez?

A.    Yes, I did.

Q.    And what was his decision about whether or not to testify in his case?

A.    His decision was that he did not want to testify. I will say I – regardless of my concerns or the pros and cons, I left it up to Mr. Lopez to determine whether he wanted to testify.

(7 RR 127-29).

Furthermore, as previously discussed Appellant did not wish to call any family or friends to testify on his behalf during the punishment phase. (7 RR 126-

37

27). Thus, Reed's strategy going forward was to undermine the investigation by pointing out that this was a he said/she said situation and that the police did not adequately investigate or document their findings in the case. (7 RR 116-17). Because Mr. Reed was pursuing a valid trial strategy dictated by Appellant in his decision not to call any other witnesses in trial, Appellant cannot show deficient performance under the first prong of *Strickland. Duncan*, 717 S.W.2d at 347; *Bass v. State*, 713 S.W.2d 782, 785 (Tex. App. -- Houston [14th Dist.] 1986, no pet.) (an appellate court will not review the wisdom of a trial tactic unless it lacks a plausible basis.).

### *Injuries to Appellant's Hands*

Appellant claims in his nineteenth sub-point that "Mr. Reed failed to prove to the jury that Appellant's hands were deformed from a prior injury to the point that he could not possibly have hit the victim without causing further injury to himself." (Appellant's brief, p.16). However, contrary to Appellant's assertion, there is absolutely no evidence in the record to suggest that Appellant's hands were injured "to the point he could not possibly have hit the victim without causing further injury to himself" and Appellant fails to cite to any location in the record where the injuries to Appellant's hands are described that way. As a consequence, this sub-issue is inadequately briefed and should be denied. *Narvaiz v. State,* 840 S.W.2d 415, 428-29 (Tex. Crim. App. 1992) (defendant's failure to cite any place

in the record where his argument was made and ruled upon by the trial court waived the error for appellate review).

Contrary to Appellant's assertion, Reed did ask both witnesses in the trial about the condition of Appellant's hands. (4 RR 41-42, 75-77). Both witnesses stated there was little or no discernable injury to Appellant's hands the night of the offense. (4 RR 41-42, 75-77). Furthermore, the record in the Motion for New Trial shows that although Appellant broke his hands approximately eight months prior to the assault against Dora, Reed's observations of Appellant and conversations with him indicated that it had little or no effect on his ability to have assaulted Dora. (7 RR 146, 164). Reed's decision not to dwell unnecessarily on injuries, which his observations and questions showed were not a viable defense, was pursuant to a valid trial strategy. (7 RR 146, 164). Consequently, Appellant fails to show how Reed's performance on this issue was deficient under the first prong of *Strickland*. *Strickland*, 466 U.S. at 687; *See United States v. Mullins*, 315 F.3d 449, 456, fn. 24 (5th Cir. 2002) (hindsight analysis not permitted in determining whether trial strategy was sound); *Bass*, 713 S.W.2d at 785.

### *Plea Offer*

Appellant claims in his twentieth sub-ground that "Mr. Reed failed to properly communicate to Appellant the State's plea offer and what charge the State was offering to allow him to plead to." (Appellant's brief, p. 16). However, Reed

39

testified in the Motion for New Trial that he in fact communicated the plea offer in the Assault Family Violence case to Appellant and he was not interested in the plea offer. (7 RR 114). Furthermore, Appellant himself testified at the Motion for New Trial that Reed communicated the twenty year plea offer to him, but stated it was for Driving While Intoxicated, not Assault Family Violence. (7 RR 177).[4] An accurate review of the record demonstrates that Appellant's contention -- that Reed failed to communicate the State's plea offer and the charge that State was allowing him to plead to -- is not true. Consequently, Appellant has failed to demonstrate how his counsel was ineffective under the first prong of *Strickland*. *Strickland,* 466 U.S. at 687.

Appellant's first point of error is without merit and should be denied.

### STATE'S RESPONSE TO APPELLANT'S POINT OF ERROR TWO

**Appellant failed to preserve his argument that Reed was not on the felony appointment list; Reed was appointed when the instant case was a misdemeanor offense, and any error was harmless.**

Appellant claims in his second point of error that his statutory rights under the Texas Fair Defense Act codified under Tex. Code Crim. Proc. art. 26.04 were violated when an attorney who was not on the court appointment list for felonies

---

[4] The record demonstrates that Appellant repeatedly insisted that he thought he should be charged with Driving While Intoxicated, not Assault Family Violence. When Appellant was charged with Assault Family Violence, Appellant repeatedly expressed confusion about why he was not charged with Driving While Intoxicated, including at arraignment to the magistrate judge (8 RR State's Exhibit A; 7 RR 136-37) and during Appellant's testimony during the punishment hearing after his trial. (5 RR 15-17).

was allowed to represent him. (Appellant's brief, p. 24). However, Appellant failed to properly preserve this point of error as he did not object at any time during the proceedings. Furthermore, Reed was appointed when the instant offense was a Class A misdemeanor and before it was enhanced to a habitual felon punishment range due to Appellant's prior convictions. Consequently, the trial court did not err in allowing Reed to remain on the case with Appellant's consent as Tex. Code Crim. Proc. art. 26.04(a) does not require an attorney on an underlying misdemeanor to withdraw if the case is enhanced to a felony offense. Finally, even if the trial court erred in appointing Thomas Reed, any error was harmless as it did not deny Appellant of a substantial right.

### *Failed to Object and Preserve Error*

A timely and reasonably specific objection is required to preserve error for appellate review. TEX. R. APP. P. 33.1(a); *Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994). Furthermore, if the defendant later abandons or waives a proper objection, he fails to preserve that issue for appellate review. *Ramos v. State,* 819 S.W.2d 939, 942 (Tex. App.--Corpus Christi 1991, pet. ref'd); *Childs v. State,* No. 05-93-01612-CR, 1995 WL 44686 at *2 (Tex. App.--Dallas Feb. 2, 1995, no pet.) (not designated for publication) ("If a defendant creates the impression he is abandoning an objection, he waives the right to complain of that alleged error on appeal"). If no objection is made, the defendant waives any error,

41

including any error concerning a constitutional right. *Little v. State*, 758 S.W.2d 551, 563 (Tex. Crim. App. 1988).

In the instant case, Appellant's appellate counsel, Rick Davis, appeared at a pretrial hearing the Friday before trial to request to be substituted in as Appellant's trial counsel. (2 RR 3-8). Neither Reed nor Davis objected to Reed's status as appointed counsel under art. 26.04. (2 RR 3-8). In fact, throughout the course of Reed's representation of Appellant no objection was ever made to Reed's representation under art. 26.04 or the Texas Fair Defense Act.

Furthermore, as previously stated Appellant affirmatively agreed to allow Reed to remain on his case despite the fact that he was not on the court appointed list:

> JUDGE [GORE]: Okay. Mr. Reed is not on the felony appointment list, so he will remain your attorney by your consent. Do you wish to have Mr. Reed stay on the case?
>
> THE DEFENDANT: That's fine. That's fine. That's fine.

(7 RR 138).

As a result, Appellant has failed to preserve this issue for appellate review. *Ramos,* 819 S.W.2d at 942; *Childs,* 1995 WL 44686 at *2.

***Applicable Law***

TEX. CODE CRIM. PROC. art. 26.04 requires:

(a) The judges of the county courts, statutory count courts and district courts trying criminal cases in each county, by local rule shall

42

> adopt and publish written countywide procedures for timely and fairly appointing counsel for an indigent defendant in the county arrested for, charged with, or taking an appeal from a conviction of a misdemeanor punishable by confinement or a felony…A court shall appoint an attorney from a public appointment list using a system of rotation…The court shall appoint attorneys from among the next five names on the appointment list in the order in which the attorneys' names appear on the list, unless the court makes a finding of good cause on the record for appointing an attorney out of order…

TEX. CODE CRIM. PROC. art. 26.04(a).

A county is required to make two separate appointment lists, one for misdemeanor offenses and one for felony offenses.  TEX. CODE CRIM. PROC. art. 26.04(e).  Criminal trial courts are required to select attorneys off these lists.  TEX. CODE CRIM. PROC. art. 26.04(a).  In the instant case, Appellant was only on the Brazos County misdemeanor appointment list when he was appointed on the underlying offense in this case, Assault Family Violence.  (7 RR 28).  Because of Appellant's prior Assault Family Violence conviction, as well as his two prior felony prison trips for Driving While Intoxicated, this offense was later enhanced to a habitual offender felony.  (7 RR 76).  However, the underlying offense remained a Class A misdemeanor offense. (7 RR 76).  Article 26.04 does not require an attorney who is initially appointed on a misdemeanor offense to be recused or required to withdraw because the offense is later enhanced to a felony. TEX. CODE CRIM. PROC. art. 26.04.    Thus because the underlying offense was a misdemeanor and Reed was initially appointed when the offense was still a

43

misdemeanor, there was no error in allowing Reed to represent Appellant under TEX. CODE CRIM. PROC. art. 26.04.

### *Harmless Error*

However, even if the trial court violated Article 26.04 by allowing Reed to remain the appointed attorney in the instant case after the State enhanced it to a felony offense, the error is subject to a harmless error analysis under Tex. R. App. P. 44.2(b) because it concerns a statutory right. Tex. R. App. P. 44.2. Under this rule, Appellant must show that the violation of a statute had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 935 S.W.2d 266,271 (Tex. Crim. App. 1997).

Appellant fails to state in any specific way how Reed's appointment harmed his case, instead concluding that Reed's appointment to the case was "the equivalent to no counsel at all." (Appellant's brief, p. 22). Appellant then argues that this Court should find that the appointment of an attorney not listed on the felony appointment list to a felony offense is fundamental error. (Appellant's brief, p. 30). However, since a possible violation of Article 26.04 is statutory, Appellant must show that Appellant's representation had a substantial and injurious effect on the jury's verdict. *King,* 935 S.W.2d at 271.

Contrary to Appellant's assertion, the record reveals that Reed did a substantial amount of work both before trial and during trial to establish Appellant's defense including:

- Meeting with Appellant and a translator to help with communication on numerous occasions both before and after court appearances. (7 RR 91-93, 98-99, 101).
- Researching whether Appellant's cases were properly enhanced. (7 RR 113).
- Communicating with parole about the effect of a conviction on Appellant's parole status. (7 RR 114).
- Receiving discovery from the State and communicating with Appellant about the evidence contained therein. (7 RR 114).
- Obtaining a plea offer from the State and communicating with Appellant about it. (7 RR 100).
- Communicating with Appellant's family about the status of the case and attempting to get him clothes for the trial. (7 RR 106, 125).
- Planning out and executing a valid trial strategy which included pointing out the flaws in the police investigation of the offense. (7 RR 116)
- Researching and explaining to Appellant the pros and cons of him testifying to the jury and recommending that he not because of his prior criminal history and possible problems communicating with jury. (7 RR 129).
- Questioning Dora about the injuries to Appellant's hands and pointing out her level of intoxication the night of the offense. (4 RR 67)
- Making an effective opening and closing statement of the weaknesses of the investigation and inconsistencies in the testimony. (4 RR 107-14).
- Making an effective closing statement in the punishment phase of trial pointing out Appellant's problems with alcohol and asking for an opportunity for Appellant to be rehabilitated. (5 RR 23-26).

As a result, Appellant cannot show any harm which resulted from Appellant's appointment to the instant case. Tex. R. App. P. 44.2(b).

Appellant's Second Point of Error is without merit and should be denied.

## **PRAYER**

Wherefore, premises considered, the State of Texas respectfully prays that Appellant's points of error be denied, and that the conviction be in all things affirmed.

Respectfully submitted,

/s/ *Jessica Escue*

Jessica Escue
Assistant District Attorney
State Bar No. 24059726
jescue@brazoscountytx.gov

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing State's Brief was emailed to Rick Davis, attorney for Appellant, at attorneyrickdavis@yahoo.com, on this the __24th__ day of ___January___, 2014.


/s/ *Jessica Escue*

Jessica Escue


## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4

I certify that the foregoing document has a word count of 11,127 based on the word count program in Word 2010.


/s/ *Jessica Escue*
Jessica Escue



# NUMBER 13-13-00080-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JESSE TIRADO LOPEZ,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

On appeal from the 85th District Court
of Brazos County, Texas.[1]

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Jesse Tirado Lopez appeals his conviction of assault—family violence,

a third-degree felony enhanced to habitual offender status.[2]   *See* TEX. PENAL CODE ANN.

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Tenth Court of Appeals in Waco, Texas.   *See* TEX. GOV'T. CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] During the punishment phase, judgments were admitted that showed appellant had the following

§§ 12.42(d), 22.01(b)(2)(A) (West, Westlaw through 2013 3d C.S.). After a jury found appellant guilty, the trial court assessed punishment at thirty-two years' confinement in the Texas Department of Corrections, Institutional Division. By two issues, appellant argues (1) he received ineffective assistance of counsel, and (2) his rights under the Texas Fair Defense Act were violated. We affirm.

## I. BACKGROUND

Officer Stacey Dowling, while responding to a noise complaint, arrived on scene to find a pickup truck with a blaring alarm. When Dowling approached, she saw Dora Mendez in the passenger seat, shaking and with dried blood on her lips, shirt, and mouth. Mendez told Dowling that she and her boyfriend, appellant, got into an argument at a bar because she did not want him to drive while he was intoxicated. As they left the bar, appellant punched Mendez in the face.

After being found guilty of assault and sentenced, appellant filed a motion for new trial alleging ineffective assistance of counsel. After the hearing, the motion was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a). This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, appellant argues that he did not receive effective assistance of counsel and asserts that his sixth amendment right to effective assistance of counsel and

---

prior convictions: (1) November 9, 1987 misdemeanor conviction for driving while intoxicated (second misdemeanor offense); (2) July 18, 1988 misdemeanor conviction for resisting arrest; (3) May 18, 1992 misdemeanor conviction for driving while license was suspended; (4) April 15, 1992 felony conviction for driving while intoxicated (first felony offense); (5) June 20, 1995 felony conviction for driving while intoxicated (second felony offense); (6) September 1, 2000 misdemeanor conviction for criminal trespass—property; (7) November 19, 2004 felony conviction for driving while intoxicated (third felony offense): (8) January 24, 2007 misdemeanor conviction for fleeing a police officer; and (9) July 21, 2009 felony conviction for driving while intoxicated (fourth felony offense) (included guilty plea for charge of resisting arrest).

2

fourteenth amendment right to due process were violated. Appellant lists twenty separate complaints in his argument section,[3] which generally fall into four categories: (1) trial counsel's qualifications; (2) lack of communication; (3) trial investigation and preparation; and (4) defense witnesses and evidence.[4]

## A. Standard of Review and Applicable Law

To prevail on an ineffective assistance claim, appellant must show: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Okonkwo v. State*, 398 S.W.3d 689, 691 (Tex. Crim. App. 2013) (explaining that the focus of appellate review is the objective reasonableness of counsel's actual conduct in light of the entire record).

When, as here, ineffective assistance was first urged in a motion for new trial, we review the two *Strickland* prongs through the prism of the abuse of discretion standard. *See Cueva v. State*, 339 S.W.3d 839, 857 (Tex. App.—Corpus Christi 2011, pet. denied);

---

[3] Appellant identified various complaints, but has failed to specifically incorporate his complaints into his discussion or otherwise cite case authority with respect to each complaint.

[4] In appellant's "Statement of Facts," he complains that trial counsel did not make "**any** challenges for cause—not a single one—notwithstanding the plethora of comments by several jurors indicating that they had already disqualified themselves because of bias or prejudice against the Appellant." Appellant, however, did not include any jury voir dire argument in his "Argument" section. Appellant has inadequately briefed and waived any challenge regarding jury voir dire. TEX. R. APP. P. 38(i).

*State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd). A trial court abuses its discretion when no reasonable review of the record could support the trial court's ruling. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012).

**B.    Analysis**

### 1. Trial Counsel's Qualifications

Appellant argues trial counsel's performance was ineffective because trial counsel was not approved for appointment in felony cases. The record shows that appellant was aware that trial counsel was not on the felony appointment list, but that he expressly informed the trial court that he wanted trial counsel to be his attorney.[5] Further, appellant's argument assumes that if an attorney is not included on the felony appointment list, the attorney is unqualified to represent a defendant in a felony matter. Appellant has not cited any case authority in support of his argument, and has not shown that trial counsel was unqualified to represent him in this case. To the contrary, the record shows that trial counsel had previous trial experience in felony cases. We reject appellant's argument that because trial counsel was not on the felony appointment list, his performance necessarily fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688.

---

[5] During arraignment, the following transpired, after discussion:

[JUDGE]:    Okay. [Defense counsel] is not on the felony appointment list, so he will remain your attorney by your consent. Do you wish to have [defense counsel] stay on the case?

[DEFENDANT]: That's fine. That's fine. That's fine.

4

**2. Communication**

Appellant complains trial counsel failed to visit him in jail, failed to respond to phone calls and letters from him, failed to respond to phone calls from Sara Portillo, the mother of appellant's children, and Dora Mendez, the "complainant", failed to send a letter to the magistrate confirming that trial counsel contacted him, and failed to properly communicate the State's plea offer to him. Appellant further complains that trial counsel only spoke with him four or five times after brief court hearings and at trial, but never outside of court.

These allegations presume appellant's version of facts is correct and disregards trial counsel's testimony at the motion for new trial hearing. Trial counsel testified that he met appellant several times before trial and discussed the case with him and informed appellant of the plea offer. In regards to the letter trial counsel allegedly failed to send to the magistrate, appellant's brief fails to explain how this failure falls below an objective standard of reasonableness. The purpose of the letter is to verify to the magistrate that a court-appointed attorney is meeting with his client within seventy-two hours of appointment. Because trial counsel does not speak Spanish, and appellant speaks limited English, trial counsel chose to meet with appellant at the courthouse in order to make use of the court's translator. Given the linguistic challenges, we consider this course of action acceptable and within an objective standard of reasonableness. *See, e.g., Campos v. State*, 927 S.W.2d 232, 237 (Tex. App.—Waco 1996, no pet.) (holding that defense counsel's alleged failure to correctly advise defendant as to possibility of deferred adjudication, ineffective communication with defendant, who spoke Spanish,

5

and failure to review photographs of victim's injuries prior to plea hearing did not constitute ineffective assistance of counsel).

Appellant and trial counsel testified at the hearing on appellant's motion for new trial. During the hearing, there was contradictory and moderating testimony regarding the contacts between appellant and trial counsel, the communications between trial counsel and Portillo, and the delivery of the plea offer. Trial counsel acknowledged receiving phone calls from the complainant but never speaking with her. Trial counsel explained his reluctance to speak with the complainant stemmed from fear of a possible accusation of witness tampering. Moreover, the record does not indicate what, if any, information trial counsel would have elicited from the complainant to help advance a viable defense. The trial court was free to believe appellant's trial counsel rather than appellant. *See Dewberry v. State*, 4 S.W.3d 735, 747 (Tex. Crim. App. 1999).

We conclude that appellant has failed to overcome the presumption that trial counsel's performance fell within the broad range of reasonable professional assistance. *See Strickland*, 466 U.S. at 688.

### 3. Case Investigation and Preparation

Appellant claims the only work trial counsel performed on his case occurred in the courtroom. Again, trial counsel's testimony contradicts appellant's claims. According to trial counsel, he met with appellant before and after court appearances with a translator; researched appellant's criminal history and enhancements; communicated with appellant's parole officer regarding the effect of a conviction on appellant's parole status; received discovery from the State; communicated with appellant about the State's

6

evidence; obtained a plea offer from the State and communicated the offer to appellant; communicated with appellant's family about the status of the case; and requested appellant's trial clothes from the family. Again, the trial court was free to believe appellant's trial counsel rather than appellant. *See Dewberry*, 4 S.W.3d at 747.

Appellant also argues trial counsel was ineffective for failing to visit the scene of the crime and scene where appellant was arrested. Trial counsel explained that his strategy, based on conversations with appellant, was to present through cross-examination appellant's contention that any contact between appellant and complainant was defensive. Appellant fails to state what particular knowledge trial counsel would have garnered from visiting the scenes, or how visiting the scenes would have aided the defensive theory. *See Strickland*, 466 U.S. at 691 (explaining that when facts that support a certain potential line of defense are generally known to counsel because of what defendant has stated, the need for further investigation may be considerably diminished or eliminated altogether).

### 4. Defense Witnesses and Evidence

Appellant contends counsel's performance was deficient because he failed to call any witnesses, failed to put on any evidence, and failed to inform Portillo that she could have testified during the punishment phase of the trial. Aside from Portillo, appellant has not identified any other testimony or evidence that could have been presented. Trial counsel's failure to call such witnesses would be "irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983) (en banc). In regards to Portillo, she

7

testified at the new trial hearing that she could have talked about appellant's life, that he was a good father, and generally about unidentified favorable things. Trial counsel stated, however, that appellant instructed him not to call his girlfriend to testify during the punishment phase and that appellant elected not to take the stand during the guilt-innocence phase. Without additional witnesses for the defense, trial counsel used cross-examination to develop the defense theory of the case. *See Duncan v. State*, 717 S.W.2d 345, 347 (Tex. Crim. App. 1986) (en banc) (holding that if defendant insists on a particular trial strategy, he may not later complain that such a strategy constitutes ineffective assistance). The trial court was free to believe trial counsel's version of events rather than appellant's. *See Dewberry*, 4 S.W.3d at 747.

Finally, appellant complains trial counsel failed to prove that appellant's hands were deformed from a prior injury to the extent that he could not have hit complainant without further injuring himself. Contrary to appellant's assertions, the trial record shows that the jury heard testimony about appellant's previously broken arms. *See Duncan*, 717 S.W.2d at 347. The responding police officer and complaining witness both testified at trial that there was no discernable injury to appellant's hands on the night of the offense. The complaining witness testified that approximately nine months before the incident, appellant broke both arms, but that he was not wearing "bandages" and was able to drive at the time of the incident.

## 5. No Showing Performance Prejudiced Defense

Rather than apply the second prong of *Strickland* to show how the alleged deficient performance prejudiced the defense, appellant argues that the cumulative errors are

8

"equivalent to no legal assistance at all," and that therefore a presumption of prejudice applies. Appellant analogizes his trial counsel's performance to presumed-harm cases in which trial counsel either slept or failed to appear for trial to this case. *See Javor v. United States,* 724 F.2d 831 (9th Cir. 1994) (holding that a presumption of prejudice exists where attorney for defendant sleeps through a substantial portion of trial); *Tippins v. Walker*, 889 F. Supp. 91 (S.D.N.Y. 1995) (same); *Hays v. Alabama*, 85 F.3d 1492 (11th Cir. 1996) (holding presumed prejudice when counsel absent, prevented from assisting during a critical phase, or failed to subject prosecution's case to meaningful adversarial testing), *Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001) (same).

Here, trial counsel was present and awake, conducted voir dire, gave legitimate opening and closing statements, pursued a trial strategy, and examined witnesses. *See Ex Parte McFarland*, 163 S.W.3d 743 (Tex. Crim. App. 2005) (en banc) (holding that no presumption of prejudice exists despite lead counsel sleeping during trial because co-counsel was an awake, active, and zealous advocate in the adversarial testing of the prosecution's case). We decline appellant's invitation to extend presumed-harm cases in which trial counsel either slept or failed to appear for trial to the facts in this case. Appellant fails to show how any of the alleged deficiencies changed the outcome of his trial. *See Strickland*, 466 U.S. at 691.

## 6. Summary

Appellant fails to rebut the presumption that trial counsel's conduct falls within the wide range of acceptable performance and fails to present record evidence satisfying the second prong of *Strickland*. *See id.* (appellant must show deficient performance

prejudiced defense to prevail on ineffective assistance of counsel claim). Appellant's ineffective assistance claim fails under both prongs of *Strickland.* Therefore, appellant has failed to show the trial court's ruling on the motion for new trial constituted an abuse of discretion. *See State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). We overrule appellant's first issue.

### III.    TEXAS FAIR DEFENSE ACT

By his second issue, appellant argues that his statutory right under the Texas Fair Defense Act (TFDA) to representation by a competent and qualified attorney was violated, thereby depriving him of effective assistance of counsel. Appellant argues that because trial counsel was not on the public appointment list for felony cases, trial counsel rendered ineffective assistance of counsel. In reaching that conclusion, appellant urges this Court to hold that a violation of the TFDA eliminates the need to meet the second prong of *Strickland* and that the appointment of an attorney not included on the list to represent misdemeanor and felony defendants is fundamental error.

The Texas Fair Defense Act was enacted in 2001 and focuses on the appointment procedures for counsel for indigent defendants. TEX. CRIM. PROC. CODE ANN. §§ 1.051, 26.04 (West, Westlaw through 2013 3d C.S.). Specifically, the TFDA governs the appointment of counsel for indigent defendants in certain criminal misdemeanor and felony cases, and authorizes local judges to establish a public appointment list of attorneys qualified to provide representation in misdemeanor and felony cases in the county and to specify the objective qualifications necessary for an attorney to be included on the list. Subsection (b), in applicable part, requires the judges to:

10

(3)    ensure that each indigent defendant in the county who is charged with a misdemeanor punishable by confinement or with a felony and who appears in court without counsel has an opportunity to confer with appointed counsel before the commencement of judicial proceedings;

. . . .

(5)    ensure that each attorney appointed from a public appointment list to represent an indigent defendant perform the attorney's duty owed to the defendant in accordance with the adopted procedures, the requirements of this code, and applicable rules of ethics;

. . . .

Subsection (d) thereafter states that a public appointment list from which an attorney is appointed shall contain the names of qualified attorneys, each of whom:

(1)   applies to be included on the list;

(2)   meets the objective qualifications specified by the judges under Subsection (e);

(3)   meets any applicable qualifications specified by the Texas Indigent Defense Commission; and

(4)   is approved by a majority of the judges who established the appointment list under Subsection (e).

*Id.* § 26.04 (b), (d).

The TFDA instituted a mechanism for establishing a public appointment list. The statute does not address what happens in the event a lawyer is appointed to represent a defendant in a misdemeanor or felony case when the lawyer's name is not included on the public appointment list. Appellant has not cited any TFDA case authority to support any of his propositions.

11

The question in this case is whether the absence of trial counsel's name from the public appointment list caused appellant a complete denial of the right to counsel. *See Cantu v. State*, 930 S.W.2d 594, 596 (Tex. Crim. App. 1996) (en banc) (*citing Strickland*, 466 U.S. at 692 (where a defendant suffers the "actual or constructive denial of counsel altogether" then prejudice is presumed). In this regard, we are not prepared to hold that representation by a person whose name does not appear on the list, for whatever reason, would be a *per se* violation of the TFDA or the right to counsel under the 6th Amendment. We decline appellant's invitation to abandon *Strickland* and to create a new category of fundamental error when a lawyer's name does not appear on a public appointment list.

Appellant's reliance on *Cantu v. State* is misplaced. In *Cantu*, the court of appeals held that the defendant's counsel's suspension from the practice of law before trial constituted a *per se* violation of the right to counsel. *Id.* at 595. The Texas Court of Criminal Appeals opined that "a suspended or disbarred attorney is incompetent as a matter of law if the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may be reasonably inferred that the attorney was incompetent to represent the defendant in the proceeding in question." *Id.* at 602. The court thereafter held, however, that because the suspension in that particular case did not relate to the trial attorney's performance in the courtroom, the suspension did not render counsel incompetent as a matter of law, and did not cause the defendant a complete denial of the right to counsel. *Id.* at 603. The Texas Court of Criminal Appeals remanded the case to the court of appeals to address the defendant's ineffective assistance claim under *Strickland. Id.* at 603.

Although appellant likens his representation in this case to being represented by an unlicensed layman, we reject this analysis. As noted in *Cantu*, the courts have held that admission to the bar permits a presumption of competence. *See Cantu*, 930 S.W.2d at 600. Moreover, even where the reasons for suspension or disbarment relate to competence to practice law, courts have generally refused to impose a *per se* rule of ineffective assistance as a matter of law. *Id.* at 601.

Appellant's trial counsel, having been licensed to practice law, is presumed to have met the threshold requirements to provide competent legal representation. Whether trial counsel's actual representation in a particular trial is competent is determined by looking to the acts or omissions of counsel established by the record. *See Strickland*, 466 U.S. at 690. As previously noted, appellant has failed to overcome the presumption that trial counsel provided effective assistance with respect to his trial. We overrule appellant's second issue.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of February, 2015.

13